In the

# United States Court of Appeals

## For the Seventh Circuit

No. 03-4230

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEVEN J. DELLA ROSE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 466—**David H. Coar**, *Judge.*

JANUARY 25, 2006

Before POSNER, RIPPLE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* This case returns to us following a remand pursuant to *United States v. Paladino*, 401 F.3d 471 (7th Cir.), *cert. denied*, 126 S. Ct. 106 (2005). *See United States v. Della Rose*, 403 F.3d 891, 907-08 (7th Cir. 2005). For the following reasons, we conclude that no plain error occurred in Della Rose's sentencing and that his sentence is reasonable.

When Della Rose was sentenced in December 2003 for conspiracy to commit mail fraud, the Supreme Court had not yet issued its decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), and so the district court treated the United States Sentencing Guidelines as binding.

In light of *Booker*, which remedied the Sixth Amendment problem posed by the Sentencing Guidelines by severing and excising the statutory provision compelling courts to follow the Guidelines, that was error. Because Della Rose did not make a *Booker*-type objection at the time of sentencing, however, the error in treating the Guidelines as binding may be recognized only if it rises to the level of plain error. *See id.*, 125 S. Ct. at 769. So that we could determine whether Della Rose was prejudiced by the error, we asked the district court to consider on remand whether it would be inclined to sentence Della Rose more leniently knowing that the Guidelines are advisory rather than mandatory. *Della Rose*, 403 F.3d at 907-08; *see Paladino*, 401 F.3d at 483-84. The district court, after considering the position papers filed by both parties, issued a brief order indicating that it would have imposed the same sentence. R. 171.

Della Rose initially argues that the district court failed to take the steps that were necessary given the circumstances of this case to resolve the *Paladino* inquiry. Della Rose asked the court on remand to conduct a hearing at which he could present evidence and make arguments regarding such factors as the nature and circumstances of his offense and his personal characteristics. These are the kinds of open-ended sentencing criteria that are identified as relevant in 18 U.S.C. § 3553(a) and which have taken on greater import in the wake of *Booker*. *See United States v. Dean*, 414 F.3d 725, 728 (7th Cir. 2005). Implicitly, the district court denied that request when it issued its order indicating that it would not have sentenced Della Rose differently knowing that the Guidelines are advisory. Della Rose suggests that the court could not reasonably decide whether it might have sentenced him differently without granting him the type of hearing that he asked for and that the court was, at the least, wrong to deny his request without explanation.

In our view, however, the district court was neither obliged to hold a hearing nor to offer reasons for its decision not to do so. In light of *Booker* and its transformation of the federal sentencing regime, the district court understood that it would have much broader discretion in sentencing Della Rose today than it did in 2003. Through the parties' written submissions, the court also was aware of the section 3553(a) sentencing factors that the parties believed were potentially most relevant to how the court might exercise that discretion. These submissions provided the court with information sufficient to enable the court to answer the *Paladino* inquiry. The district judge, after all, had presided over Della Rose's trial and sentenced him; the judge was, therefore, intimately familiar with both the facts underlying the conviction as well as Della Rose's background.

As Della Rose points out, a number of district judges in this circuit have elected to hold hearings before deciding whether or not they would be inclined to sentence particular defendants differently in light of *Booker*. We do not doubt that district courts have the discretion, when confronted with a *Paladino* remand, to convene a hearing in order to take additional evidence, entertain oral argument, or to afford the defendant a new allocution. But *Paladino* does not suggest that the district court is obliged to hold such a hearing whenever a defendant requests it; on the contrary, *Paladino* suggests that so long as the parties are given the opportunity to make written arguments as to the impact of *Booker* on the judge's sentencing decision, a hearing is not necessarily required. 401 F.3d at 484.

Even if we assume for the sake of argument that a *Paladino* remand might necessitate a hearing in some cases, this is not one of them. This is not a case, for example, in which the defendant submitted a proffer indicating that he was prepared to present testimony regarding some aspect of his offense or his personal history which (if the testimony were credited) might be so compelling as to rebut

the presumption of reasonableness that attaches to a sentence that is within the Guidelines range. *Cf. United States v. Cunningham*, 429 F.3d 673, 678-79 (7th Cir. 2005) (defendant proffered evidence of significant psychiatric problems). Della Rose's written submission to the district court alluded to several circumstances that he believed warranted a lesser sentence than the one the court had imposed prior to *Booker*: (1) the fraud in this case involved a relatively modest sum of money ($64,000), (2) Della Rose had made positive contributions to his community; and (3) he had lost his law license. R. 161 ¶¶ 6, 7, 10. None of these amounts to an extraordinary circumstance; on the contrary, they are of a kind with the sorts of mitigating factors routinely argued to sentencing judges. After *Booker*, certainly, a federal judge may give these factors much more weight than the Guidelines themselves would have allowed. But for the same reasons we conclude below that these circumstances do not call into question the reasonableness of Della Rose's sentence, they do not call into doubt the district court's decision to resolve the *Paladino* remand without holding a hearing.

The district judge's answer to the *Paladino* inquiry reveals that Della Rose's substantial rights were not affected by the error in treating the Guidelines as binding rather than advisory. *See* Fed. R. Crim. P. 52(b). With the benefit of the parties' input, and on consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the district judge concluded that he would not have imposed a different sentence even had he known that the Guidelines did not bind him. R. 171. Because the error in the court's treatment of the Guidelines did not make him "worse off," *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005), it does not constitute plain error that warrants relief on appeal. *See Paladino*, 401 F.3d at 484. All that remains is for us to determine whether the sentence imposed is reasonable. *Id.*

Della Rose's sentence, which is within (albeit at the top of) the Guidelines range, is presumptively reasonable. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). The defendant bears the burden of establishing that his sentence is unreasonable in light of the sentencing factors set forth in section 3553(a). *Id.* Della Rose has not carried this burden.

Della Rose suggests that his sentence is out of proportion to the money at stake in the underlying fraud, pointing out that, under the Guidelines, a sentence of 41 months is commensurate with a fraud involving between $400,000 to $1 million, *see* U.S.S.G. § 2B1.1(b)(1)(H) (Nov. 2003), a sum far greater than the $64,000 of which he defrauded his client. But focusing solely on the amount of money involved in the fraud, which by itself would have called for a much lower offense level and sentencing range, ignores the enhancements to Della Rose's offense level triggered by other aspects of his fraud. These include Della Rose's attempt to obstruct justice by soliciting false testimony from an acquaintance, *see* § 3C1.1, his decision to defraud a client who was unusually vulnerable given his history of drug abuse and psychiatric problems, *see* § 3A1.1(b)(1), the abuse of trust inherent in the attorney-client relationship, *see* § 3B1.3, and his leadership role in the conspiracy, *see* 3B1.1(c). Those enhancements would still apply in the wake of *Booker*. *See*, *e.g.*, *Dean*, 414 F.3d at 727. The enhancements demonstrate the ways in which Della Rose's criminal conduct was more serious than if he had engaged in a simple theft of $64,000 from someone at arms-length from him, and why it is misleading to suggest that he was sentenced as if he had stolen ten times that amount.

Della Rose goes on to contend that the loss of his law license, the restitution he has made to his victim, and the fact that "[h]e has no criminal record beyond this offense of opportunity" together demonstrate that a lesser sentence would suffice for purposes of punishment and deterrence.

Della Rose Mem. at 7. We may assume that Della Rose is unlikely to commit another crime and that a prison term of 41 months is not strictly necessary to ensure that he does not do so. Still, the crime of which Della Rose was convicted amounts to a profound abuse of his fiduciary responsibilities as an attorney, and one can reasonably see a sentence at the top of the Guidelines range as appropriate to account for the gravity of Della Rose's offense and to deter others from attempting similar frauds. Although Della Rose characterizes the loss of his license to practice law as significant punishment in and of itself, it is really the forfeiture of a professional privilege that arguably serves prophylactic more than punitive ends. *See Hudson v. United States*, 522 U.S. 93, 104-05, 118 S. Ct. 488, 495-96 (1997) (occupational debarment does not constitute criminal punishment for double jeopardy purposes). Della Rose's lack of a prior criminal record was, of course, accounted for in his Criminal History category.

Finally, Della Rose has submitted letters indicating that he has had a positive impact on depressed neighborhoods in Chicago by buying and improving derelict properties. His accomplishments in that regard may, as his attorneys submit, "attest to his trustworthiness and fair dealing, in stark contrast to the crime here . . . ." Della Rose Mem. at 7. But they are by no means out of the ordinary. Defendants accused of comparable frauds often have impressive records of civic and philanthropic accomplishments. These good deeds in no way lessen the harm suffered by the victims of their crimes, and in some ways they render the crimes themselves all the more puzzling and deplorable. A sentencing judge surely may elect to treat a defendant's contributions to his community as evidence of his redeeming qualities and as a ground for a less severe sentence, but such contributions do little to establish that a sentence within the Guidelines range is unreasonable.

The evidence in this case indicates that Della Rose saw an opportunity to take advantage of a disturbed and vulnerable client, recruited others into a scheme to defraud that client, and when the fraud came to light, endeavored to hide his crime and even to obstruct justice. This was in no sense a minor crime. The length of the prison term imposed is entirely reasonable, and we therefore AFFIRM Della Rose's sentence.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*