FILED
United States Court of Appeals
Tenth Circuit

June 20, 2017

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

JOSEPH ANDREW DeRUSSE,

Defendant - Appellee.

No. 15-3302

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 6:15-CR-10010-JTM-1)**

---

Carrie N. Capwell, Assistant United States Attorney, Office of the United States Attorney, Kansas City, Kansas (Barry R. Grissom, United States Attorney, and Aaron Smith, Assistant United States Attorney, Wichita, Kansas, on the brief) for Plaintiff-Appellant.

Daniel T. Hansmeier, Appellate Chief (Melody Brannon, Federal Public Defender, and Steven K. Gradert, Assistant Federal Public Defender, with him on the brief), Kansas City, Kansas, for Defendant–Appellee.

---

Before **TYMKOVICH**, Chief Judge, **McKAY** and **BALDOCK**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

The government appeals the sentence imposed in this kidnapping case. Reviewing the district court's sentencing decision under a deferential abuse-of-discretion standard, we affirm the ruling.

Defendant Joseph DeRusse, while suffering from then-undiagnosed mental health issues, kidnapped his ex-girlfriend with a BB gun, and drove her several hundred miles away from her parents' home in Austin, Texas, intending to keep her at a bed-and-breakfast in Kansas for three weeks while he attempted to convince her to marry him. (Both Defendant and the victim were twenty-four years old at the time.) About eight hours into the kidnapping, Defendant was apprehended by a police officer on the interstate freeway in Kansas. Defendant served approximately seventy days in jail before he was released on bond. He entered a plea of guilty to the single count of kidnapping.

Defendant had no prior criminal history of any sort, and the Presentence Investigation Report (PSR) calculated an advisory sentencing range of 108–135 months, based on a total offense level of 31 and a criminal history category of I. The PSR described the way in which Defendant lured the victim to her sister's apartment building by purchasing a mobile phone, which he used to contact a friend of the victim, pretending to be a mutual friend who had a surprise for the victim at the building. When the victim arrived, he pointed a gun at her, forced her back into her car, put a sleeping mask on her eyes, and made her wear a neck pillow so that anyone who looked into the car would believe she was simply sleeping. (The victim thought Defendant's gun was a real gun and did not discover that it was a BB gun until shortly before Defendant was apprehended

by the police in Kansas.) The PSR detailed the significant psychological injury the victim suffered as a result of her kidnapping. The victim reported she did not have a history of psychological issues or medical problems prior to this incident, but she was now under the care of mental health practitioners and had been diagnosed with major depressive disorder, anxiety, and post-traumatic stress disorder. She stated that she was now suffering from suicidal ideation, paranoia, nightmares, insomnia, and stress-related medical problems.

The PSR also described Defendant's difficult family background and history, and it quoted at length from the report of a forensic psychologist who evaluated Defendant and diagnosed him with major depressive disorder and obsessive-compulsive disorder. The psychologist noted, among other things, that the testing results reflected "debilitating depression and anxiety; and thought processes characterized by obsessions, suicidal ideation, and unusual perceptions or beliefs." (App. Vol. II at 11.)

The district court was informed that Defendant had been seeing a therapist and a psychiatrist and, now that he was receiving medication and other treatment, his mood and mental health had stabilized, and he was doing much better.

Before sentencing, the district court received dozens of letters from family members and acquaintances of both Defendant and the victim. Many friends wrote that they had known Defendant since he was a young child, that he was consistently caring and considerate, that he spent much of his time volunteering with his church and helping others, that they had never seen him act aggressively or violently, and that they found the

kidnapping to be completely out of character for him. Several expressed the view that he must not have been "in his right mind when he did what he did" (Suppl. Index at 28) and that they were convinced he would never engage in such behavior again. The letters submitted on behalf of the victim apparently described the serious impact the kidnapping had on her, although none of these letters have been included in the record on appeal.

The district court began the sentencing hearing by stating, "[I]n my nearly 20 years on the bench, I have never encountered a sentencing that I have thought about more or tried to work through more." (App. Vol. I at 81.) After summarizing the circumstances of the case, the district court stated: "[A]fter considering the above factors and the advisory sentencing guidelines, the nature and circumstances of the offense, and Mr. DeRusse's history and characteristics, I have decided to depart downward on the basis of aberrant behavior, because there is absolutely no history or indication in Mr. DeRusse's background that he has ever been involved in anything of this nature or anything even remotely related to it prior to this time." (*Id.* at 85–86.) The court also found that Defendant "was suffering from a mental illness at the time, which does not justify what he has done, but it's a factor to take into account and, obviously, since he has been seeing mental health treatment providers and has been on medication, there have been absolutely no issues." (*Id.* at 86.) The court then announced its intention to sentence Defendant to a term of time served, to be followed by five years of supervised release. The court concluded that "[t]he supervised release term, which is as long a period of release as I can impose here, will allow [Defendant] the opportunity to receive correctional treatment in

an effective manner and will assist with community reintegration, all in accordance with 18 U.S.C. Section 3553(a)(2)(D)." (*Id.* at 87.) The court further noted that this supervised release term would require Defendant to stay in Kansas, far away from the victim's home in Austin, Texas, and that the terms of his release would additionally prevent him from contacting the victim or her family. Moreover, his supervised release would require him to regularly report to his probation officer and to continue his mental health treatment. The court further noted that Defendant would suffer all of the repercussions of having a felony conviction on his record for the rest of his life.

In describing why it believed this intended sentence was appropriate, the court stated:

> [T]his is not your standard kidnapping. It was the perfect storm of immaturity on the part of both Mr. DeRusse and the victim. There was family interference, mental illness that factors into this in a very big way and, frankly, just not knowing how to cope with it[,] and I think this sentence addresses every aspect of this case in a meaningful way.

(*Id.* at 90–91.)

The court then heard a lengthy argument from the government, which requested a guidelines-range sentence of 108 months instead and highlighted all of the reasons why the government believed a significant term of imprisonment was necessary to reflect the seriousness of the offense. The court also heard from Defendant, the victim, the victim's father, the victim's grandfather, a friend of the family, Defendant's brother, and the victim's sister (who was married to Defendant's brother, and thus Defendant's sister-in-law as well). After hearing all of the arguments and statements, the court told the victim

-5-

that the kidnapping was not her fault, that it was not her family's fault, and that the court

had a great deal of sympathy for the suffering everyone had experienced.  The court

further stated that it "would never for a second say that this [offense] was not heinous."

(*Id.* at 163.)  However, the court explained:

> What I would say is that the motive behind it, as I have been able to discern
> it, was not an evil one.  I think it was seriously off base as a result of mental
> illness and I think there were other maturity factors, too, that came into play
> there but there was no ill intent here, as far as I could tell, in terms of an end
> position.  It was wrong.  It was tragic in so many respects but it was
> not—there was not an evil intent, and I think that is important.

(*Id.* at 164.)  The court then stated that, "after much, long thought," it was imposing a

sentence of time served, to be followed by five years of supervised release.  (*Id.* at 166.)

This supervised release included both standard and special conditions of release,

including a requirement for Defendant to continue participating in mental health

treatment, prohibitions on contact with the victim and her family, and a curfew of up to

six months, during which time Defendant would be restricted to his residence and might

be required to wear a location-monitoring device, as directed by the probation office.

The government appeals the substantive reasonableness of the sentence imposed.[1] We review this issue under a deferential abuse-of-discretion standard and will reverse only if the sentence imposed was "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Gantt*, 679 F.3d 1240, 1249 (10th Cir. 2012). Stated differently, "we will reverse a determination only if the court exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (internal quotation marks omitted).

> This is to say, we recognize that in many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices. And there are perhaps few arenas where the range of rationally permissible choices is as large as it is in sentencing, a task calling on a district court's unique familiarity with the facts and circumstances of a case and its judgment in balancing a host of incommensurate and disparate considerations, ranging from the degree of the defendant's cooperation and remorse to the need for deterring potential future offenders. Nonetheless, we will not hesitate to find abuse where a decision is either based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment.

---

[1] To the extent the government seeks to challenge the procedural reasonableness of the district court's sentencing calculation, and particularly the court's conclusion that a downward departure was warranted, any such arguments have been waived by the government's failure either to raise these specific objections below or to make an argument for plain error review on appeal. *See United States v. Lamirand*, 669 F.3d 1091, 1099 n.7 (10th Cir. 2012) ("[T]he failure to argue for plain error and its application on appeal surely marks the end of the road for an argument for reversal not first presented to the district court." (internal quotation marks and ellipsis omitted)).

*Id.* at 1053–54 (internal quotation marks and citations omitted).

The government raises several challenges to the district court's sentencing decision. First, the government argues that the district court erred in concluding that Defendant's conduct was aberrational and that the aberrational nature of his behavior warranted both a departure under Section 5K2.20 of the sentencing guidelines and a downward variance from the guidelines under 18 U.S.C. § 3553(a)(1). The government notes that a defendant is only entitled to an aberrational-behavior departure under Section 2K2.20 if he committed a criminal act "without significant planning" that "was of limited duration" and "represents a marked deviation by the defendant from an otherwise law-abiding life," and the government contends that Defendant's behavior cannot be considered to be aberrational because the kidnapping involved significant planning over a period of days, if not weeks, and the kidnapping itself lasted for several hours.

The government seeks to challenge both the downward departure and the downward variance for aberrant behavior. We consider the challenge to the variance first. The government assumes that a downward variance under 18 U.S.C. § 3553(a)(1) must be governed by the same standards that govern a downward departure under Section 5K2.20. However, the government presents no support for this argument, and we are persuaded to the contrary. While a downward departure is based on a specific guideline provision, a downward variance is based simply on the district court's discretionary authority to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" in selecting "a sentence sufficient, but not greater than

necessary," to comply with all of the purposes of sentencing. 18 U.S.C. § 3553(a). We see no reason why a variance based on the district court's discretionary authority should be constrained by any of the specific requirements listed in a guideline that plays no role in the variance itself. "The case law relied on by [the government] is distinguishable because it all relates to departures *under* the guidelines, not variances *from* the guidelines. A variance can be imposed without compliance with the rigorous requirements for departures." *United States v. Gantt*, 679 F.3d 1240, 1247 (10th Cir. 2012). Thus, we see no reason why the district court's discretionary consideration of the aberrant nature of Defendant's conduct, for purposes of a downward variance, could not focus on the extent to which the criminal conduct was out of character for him, rather than on the factors that would be applicable for a Section 5K2.20 departure. Indeed, in cases issued before Section 5K2.20 was promulgated, we held that spontaneity was not required for a sentence to be reduced based on aberrant behavior and that the proper focus was on the aberrational character of the conduct, not on the carefulness of planning or the number of discrete acts undertaken by the defendant. *See, e.g.*, *United States v. Garcia*, 182 F.3d 1165, 1176 (10th Cir. 1999). We see no reason why the same rationale should not apply to downward-variance cases, which are separate and independent from Section 5K2.20 downward-departure cases.

Here, the district court received extensive evidence that the kidnapping was extremely out of character for Defendant, and the district court did not need to consider the other requirements that would be applicable for a Section 5K2.20 downward

departure in order to conclude that Defendant's conduct was aberrant for purposes of a §

3553(a) downward variance. Considering all of the circumstances of this case, and taking

into account the sentencing judge's "superior position to find facts and judge their import

under § 3553(a) in the individual case," *Gall v. United States*, 552 U.S. 38, 51 (2007), we

see no abuse of discretion in the district court's conclusion that Defendant was entitled to

a downward variance based on the aberrational nature of his conduct.

We turn then the government's challenge to the Section 5K2.20 downward

departure.  We are not persuaded that the government raised a sufficiently specific

objection to the departure to preserve this issue for appeal.  *See United States v. Winder*,

557 F.3d 1129, 1136 (10th Cir. 2009) ("Our precedent is clear that an objection must be

definite enough to indicate to the district court the precise ground for a party's complaint.

Absent a specific objection, the district court is deprived of the opportunity to correct its

action in the first instance." (internal quotation marks and citations omitted)).  Moreover,

the government fails to respond to Defendant's persuasive argument that any error in

applying this section was harmless due to the redundant nature of the downward variance

and downward departure as they were applied in this case, combined with our earlier

conclusion that the downward variance was permissible.  After carefully reviewing the

sentencing transcript and the district court's Statement of Reasons, we find "no reason to

think that the district court would impose a different sentence on remand" if we were to

reverse the departure while affirming the variance, *see United States v. Arrevalo-Olvera*,

495 F.3d 1211, 1214 (10th Cir. 2007) (internal quotation marks omitted), and we thus

conclude that any error in the district court's application of the Section 5K2.20 departure was harmless. We accordingly need not reach the merits of the government's arguments regarding the requirements of this section.

The government's next challenge to the reasonableness of the district court's sentencing decision is an argument that the district court gave improper weight to Defendant's mental illness. The government argues that Defendant could continue to receive mental health treatment in jail, and thus the court did not need to impose a sentence of supervised release instead of imprisonment in order to ensure that Defendant received the mental health treatment he required. However, this argument ignores the main reason the district court concluded that Defendant's mental health warranted a below-guidelines sentence. While the court was indeed concerned that Defendant would continue to receive the mental health treatment he required, the court's primary consideration was the extent to which Defendant's mental illnesses led to the delusional thinking that caused him to commit such an out-of-character crime. As the district court admonished the government below, the government has continued to "brush[] over the fact that this guy, by virtually every account, was seriously mentally ill. Not to the point of anybody saying that he shouldn't be held responsible criminally, . . . but the extent that that might have had on his decision making and his actions immediately post." (App. Vol. I at 113.) We see no error, much less clear error, in the district court's evaluation of the role Defendant's mental illness played in the offense, and the government has failed to convince us that the district court went outside the wide range of rationally permissible

choices available at sentencing when it decided to give substantial weight to this factor in its determination of an appropriate sentence.

Next, the government argues that the district court imposed a manifestly unreasonable sentence because it failed to give due consideration to the seriousness of the offense and the need for just punishment. "The significance of the injuries to the victim in this case and the need to satisfy the sentencing policy requirement for 'just punishment' for the offense are in direct contradiction to the district court's downward variance in this matter." (Appellant's Br. at 21 (quoting 18 U.S.C. § 3553(a)(2)(A)).) The government argues that the district court downplayed the seriousness of the offense by telling the victim that she "could and would 'get over'[2] her injuries and that it was largely up to her whether she did so or not." (*Id.*) The government argues that the district court further downplayed the seriousness of the offense by describing the victim as immature and by characterizing the kidnapping as an immature relationship gone bad instead of a terrifying crime.

Viewing the entire sentencing transcript in context, however, we are convinced that the district court was fully aware of the seriousness of the offense and took very seriously the harm suffered by the victim and her family. For instance, contrary to the government's characterizations, the court did not callously tell the victim that she could

---

[2] We note that the phrase "get over" never appears in the district court's comments at sentencing. The quotation marks around these words in the government's brief are apparently intended simply to convey the colloquial nature of this phrase, not to suggest that the district court used such terminology.

"get over" the kidnapping because it was not really very serious.  Rather, after hearing the

victim testify that she felt "unworthy to be alive" because she had been kidnapped and

she did not know whether she would ever again recover and be a trusting, compassionate,

happy person again (App. Vol. I at 128–29), the sentencing judge told her that he believed

in her strength and resilience and that he was optimistic about her chances of fully

recovering from her ordeal because he "cling[s] to the hope that everybody can get better

and will get better" (*id.* at 162).  The government's brief quotes snippets of the court's

comments out of context in a way that mischaracterizes their tenor, and our independent

review of the sentencing transcript persuades us that all of the court's comments to the

victim were intended to encourage and heal, not to belittle or downplay.  As for the

court's comments about the immaturity of both Defendant and the victim, the court

reasonably found that "the nature and circumstances of the offense"—a key consideration

for sentencing under 18 U.S.C. § 3553(a)—included the parties' immaturity and lack of

relationship experience, which, fueled by Defendant's mental illness, created a "perfect

storm of immaturity" (*id.* at 91) in which Defendant hatched his delusional and "seriously

off base" plan to kidnap the victim in order to have the chance to speak with her alone (*id.*

at 164).  The court made clear that the victim was not at all at fault for what happened to

her, but the immaturity on both sides was still pertinent to the court's assessment of the

nature and circumstances of the offense.  In context, the court's comments consistently

reflect both compassion towards the victim and a full acknowledgment of the gravity of

the offense, and we see nothing in the transcript to suggest the court failed to consider either the seriousness of the offense or the need for just punishment.

Finally, the government has submitted a supplemental authority letter pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure to argue that this circuit's recent decision in *United States v. Walker*, 844 F.3d 1253 (10th Cir. 2017), supports the government's contention that the sentence of time-served in this case was substantively unreasonable. However, the facts of *Walker* are quite different from the facts before us in this case, and nothing in *Walker* persuades us that the district court abused its discretion in the instant case. In *Walker*, the district court imposed a sentence of time-served—amounting to thirty-three days in pretrial detention—for two armed bank robberies committed by a career offender simply because of his post-offense rehabilitation, where the advisory guidelines range for the offenses was 151–188 months. There was nothing unusual or out of the ordinary about the bank robberies committed in that case that would mitigate the seriousness of the offense or suggest that the defendant acted with no ill intent. The defendant did not suffer from an undiagnosed mental illness that caused severely delusional thinking or affected his abilities to perceive the wrongful nature of his actions. And, far from being an aberrant, out-of-character action, the offenses of conviction were part of a long string of similar criminal conduct. Indeed, the defendant "admitted to more than twelve bank robberies and had felony convictions not only for bank robbery but also for possession of controlled substances and possession of a controlled substance with intent to distribute. And while on release conditions, he had

absconded supervision, possessed methamphetamine, possessed methamphetamine with intent to distribute, and driven a vehicle while intoxicated." *Id.* at 1259.

In reversing the district court's sentencing decision in *Walker* as substantively unreasonable, the panel in *Walker* repeatedly stressed the defendant's status as a career offender. Based mainly on the defendant's lengthy and serious criminal history, the panel concluded that the district court had abused its broad sentencing discretion by "focus[ing] almost exclusively on [the defendant's] newfound sobriety" to select a sentence of time-served for two typical bank robberies committed by a career offender. *Id.* Moreover, the panel expressed some skepticism about the defendant's purported rehabilitation, noting that this was not the first time the defendant had overcome his addiction problems and that the previous period of rehabilitation had lasted for three years before the defendant "relaps[ed] and robb[ed] two banks." *Id.* at 1257 n.2. Here, by contrast, the district court found that the offense of conviction fell far outside the heartland of kidnapping offenses,[3]

---

[3] We note that the government uses its 28(j) letter to advance an argument it raised for the first time at oral argument—that the district court failed to give adequate consideration to the importance of general deterrence in its sentencing determination. Arguments that are raised for the first time at oral argument "come[] too late to merit our attention." *United States v. Brown*, 164 F.3d 518, 521 n.3 (10th Cir. 1998). Moreover, even if we were to consider this argument, we note that the general-deterrence value of a sentence is likely to be much higher in cases that fall within the heartland of similar offenses, like the very typical bank robberies that were at issue in *Walker*, where other potential offenders considering committing such an offense will be similarly situated to the defendant. Here, the district court found that the offense involved atypical circumstances that fell far outside the heartland of most kidnapping offenses, and we are not persuaded that, under the unusual circumstances of this case, the district court failed to give adequate weight to the general-deterrence factor.

that the crime was not motivated by any evil or ill intentions, that this was aberrational conduct from a first-time offender suffering from a severe, then-undiagnosed mental illness, and that there was absolutely no reason to believe that the defendant would ever commit a similar crime again. The district court then thoughtfully considered all of the § 3553 factors, rather than focusing almost exclusively on one particular factor, and concluded based on its assessment of all of these factors that a sentence of time-served would be the most appropriate sentence under the unique circumstances of this case. The only real similarity between *Walker* and this case is the fact that the district court imposed a time-served sentence for a serious crime, and the vast dissimilarities between the circumstances of the offenses and the offenders in this case and in *Walker* lead us to reach a different conclusion here. Unlike the district court's decision in *Walker*, the district court's decision in this case was an appropriate exercise of the court's broad discretionary powers to weigh the § 3553 factors and select a sentence from among "the range of rationally permissible choices" available to the court. *McComb*, 519 F.3d at 1053.

Ultimately, the government simply disagrees with the way in which the district court weighed the 18 U.S.C. § 3553(a) sentencing factors and decided to impose a sentence of time-served followed by a five-year period of supervised release. We acknowledge that a valid argument could be made for a longer sentence than was imposed here. However, after a thorough review of the record on appeal, we simply cannot say that the court's thoughtful sentencing determination fell outside the range of rationally permissible choices available at sentencing. While this court might not have reached the

-16-

same sentencing decision in the first instance, we are not persuaded that the sentencing court abused its substantial discretion when it chose the sentence it imposed in this unusual case.

We accordingly **AFFIRM** Defendant's conviction and sentence.

No. 15-3302, *United States v. DeRusse*

**BALDOCK**, Circuit Judge, dissenting.

By all accounts this case is a difficult one, and the Court reaches its conclusion in a meticulous and persuasive opinion. Nonetheless, I cannot vote to affirm Defendant's sentence. As the Court correctly points out, "we review a sentence for substantive reasonableness 'under a deferential abuse-of-discretion standard,'" *United States v. Craig*, 808 F.3d 1249, 1261 (10th Cir. 2015) (quoting *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1214 (10th Cir. 2008)), and "we will 'find an abuse of discretion only if the district court was arbitrary, capricious, whimsical, or *manifestly unreasonable* when it weighed the permissible § 3553(a) factors,'" *id.* (emphasis added) (quoting *United States v. Sanchez-Leon*, 764 F.3d 1248, 1267 (10th Cir. 2014)). Given that Defendant (1) lured this young woman to an apartment building, (2) laid in wait for her to arrive, (3) pointed what she believed was a deadly gun at her, (4) forced her back into her car, (5) handcuffed her, (6) covered her eyes with a sleeping mask and put a neck pillow behind her head to make her appear as if she was sleeping, (7) drove across state lines to Kansas where he planned to imprison his victim at a bed-and-breakfast for three weeks, (8) blamed her during their eight-hour car ride for making him engage in these actions, and (9) at one point forced her to kiss him, a sentence of time served—a mere *70 days*—is in my view manifestly unreasonable under § 3553(a).

The district court's decision to vary downward based on Defendant's aberrational behavior is understandable. I am equally sympathetic to Defendant's serious mental illness and the effect that rightfully played in the district court's pronounced sentence.

Defendant is (or at least was) a very troubled young man, and I am encouraged to hear that proper medical treatment has had a positive influence on his life. Let us hope that he continues to improve as his life moves forward.

But whatever influence these two factors should have had on Defendant's sentence, they are not so significant as to merit a term of imprisonment that lasted just slightly longer than two months. Section 3553(a)(2)(A)—"the need for the sentence imposed . . . to reflect the seriousness of the offense . . . and to provide just punishment for the offense"—demands a substantially longer prison sentence. Defendant literally kidnapped this young woman at gunpoint (that it was a BB gun made little difference when she could not have known otherwise) and held her captive against her will for several hours. Short of physical torture, rape, or attempted murder, few other crimes would be so traumatizing. Although this conclusion should be obvious in itself, the record reaffirms the destructive consequences Defendant's actions had on the victim: among many other side effects, she has extreme anxiety and paranoia, suffers from post-traumatic stress disorder, and fantasizes about committing suicide. To be sure, this poor girl's experience did not end when police officers finally apprehended Defendant on a freeway in Kansas. Instead, her experience continues (and perhaps will continue for the rest of her life) in the form of the awful memories she unwillingly relives over and over.

The heinous nature of Defendant's crime and its demand for just punishment thus cast a wide shadow over Defendant's fleeting sentence that I cannot ignore. And although, as the majority recognizes, the district court indicated it had sincerely considered the seriousness of the offense and the effect it had on the victim, a time-served

2

sentence does not reasonably reflect these concerns even after factoring in the large amount of deference we owe the district court. No matter how out of character it was for Defendant to kidnap an ex-girlfriend (wouldn't this be out of character for the vast majority of people?) and no matter how significant a role Defendant's mental illness played in him choosing to kidnap an ex-girlfriend (a mental illness that no one contends was so debilitating that it negated Defendant's *intent* to commit this crime), a kidnapping is still a kidnapping. Seventy days in jail for that crime is ludicrous. A sentence as unjustly short as that speaks louder than the words the district court used to support its reasons for imposing that sentence.

Perhaps most concerning is the district court's focus on both parties' immaturity. Although the majority persuasively makes the case that the district court appropriately considered this "perfect storm of immaturity" as part of the nature and circumstances of the offense under § 3553(a)(1), the district court's consideration of immaturity appears to me to be nothing more than a veiled attempt to rationalize what Defendant did as "kids being kids" or "boys being boys." Again, this was a kidnapping at gunpoint, it lasted eight hours, and en route Defendant blamed the victim for what was happening and solicited a kiss from her while she was under extreme duress. This was not some light mischief. This was a serious felony that originally called for a Guidelines range of 108–135 months' imprisonment. I am aware of no other instance where such an atrocious federal crime can be explained away by "immaturity," especially by a man who was six years older than the age at which an individual can fight and die for his or her country. What if Defendant had raped the victim under some "immature" opinion that a man is

3

entitled to do that to an ex-girlfriend?  Would his "immaturity" save him from a harsh sentence then, or would the victim's "immaturity" somehow weigh in favor of giving him a more lenient sentence?  To me, the same logic should apply to a kidnapping at gunpoint, and I suspect the young lady in this case would feel the same.

Further, even if not immaturity, my experience on the federal bench has taught me that a large percentage of individuals who commit heinous crimes can point to *some* mitigating factor—drug addiction, childhood abuse, a life of poverty, etc.—that partially fuels their decision to commit those crimes.  But whatever effect these factors should have on lessening their sentences, they are almost never so significant that they warrant letting these individuals walk away with time-served sentences.  A person—male or female, rich or poor, mature or immature—who intends to commit a heinous crime and then goes through with that crime must face the appropriate consequences for what he or she has done.  And while I'm not so audacious as to speculate what these consequences should be for each and every serious crime in each and every individual circumstance, I feel comfortable concluding that a time-served sentence of 70 days for a well-thought-out, eight-hour-long, meant-to-appear-as-if-by-deadly-firearm kidnapping is woefully insufficient even when the kidnapper and victim were both immature.  *Cf. United States v. Walker*, 844 F.3d 1253, 1255, 1259 (10th Cir. 2017) (holding that a time-served sentence of 33 days for armed bank robbery was substantively unreasonable even though the defendant's addiction to drugs and alcohol fueled his crimes).

But if a sentence of 70 days' imprisonment is not appropriate, what is?  Perhaps a sentence of 70 *months'* imprisonment—still a significant downward variance from

4

Defendant's suggested Guidelines range of 108–135 months'—would have done the job. Or perhaps even 70 *weeks'* imprisonment—just over a year—would have been "sufficient, but not greater than necessary" after considering Defendant's aberrant behavior and mental illness. 18 U.S.C. § 3553(a). As an appellate court, we are not in a position to determine what the precise term of imprisonment should be. *See United States v. Friedman*, 554 F.3d 1301, 1310 (10th Cir. 2009) ("[T]his court is well aware that the district court is in a 'superior position to find facts and judge their import under § 3553(a).'" (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007))). But we *do* stand as a check against manifestly unreasonable sentences. And whatever a reasonable sentence is for the traumatizing kidnapping in this specific case, it is surely not a mere 70 days.

Let me again echo what I noted at the beginning: this case is a difficult one. But what makes it difficult is not whether we ourselves would have imposed a different sentence in the first instance. That alone would be "insufficient to justify reversal of the district court," *Gall*, 552 U.S. at 51, and I believe the majority's concluding paragraph suggests that it also would have chosen a different sentence for Defendant if it had the first shot at it. Instead, this case is difficult because the district court's sentence teeters on "the bounds of permissible choice"—or, stated differently, pushes the limits of discretion to the very extreme. *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)). Unlike the majority, however, my belief is that the district court's decision to impose a time-served sentence of 70 days on Defendant fell on the wrong side of that boundary. I therefore respectfully dissent.

5