**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 29, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTOPHER STEVEN TYNDALL,

    Defendant - Appellant.

No. 17-8061
(D.C. No. 1:10-CR-00080-ABJ-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

Defendant-Appellant Christopher Steven Tyndall appeals from the district

court's imposition of a two-year term of imprisonment after Tyndall violated the

conditions of his supervised release.  We exercise jurisdiction under 18 U.S.C.

§ 3742(a) and 28 U.S.C. § 1291 and **AFFIRM**.

**I**

In 2010, Tyndall pled guilty to possession of a firearm by a previously

convicted felon, in violation of 18 U.S.C. §§ 922(g)(3), 924(a)(2).  ROA, Vol. I at

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

16–19. The district court sentenced Tyndall to five years of imprisonment, followed by three years of supervised release. *Id.* at 20–25.

Tyndall was released from prison in August 2014 and began supervised release. A month later, Tyndall was arrested for reckless driving and running a stop sign. *Id.* at 31. During the course of the arrest, police smelled alcohol on Tyndall's breath, and Tyndall admitted that he had "consumed two beers and ma[de] a poor choice." *Id.* The probation office "admonished [Tyndall] for his choices, regressed to a more frequent interval of substance abuse testing, and instructed [Tyndall] to complete a Social Values journal assignment." *Id.*

Two months later, in November 2014, Tyndall was arrested for driving while under the influence with an open container in his vehicle. *Id.* He pled guilty to the offense and spent 62 days in Wyoming state custody. *Id.* After being released from custody in January 2015, Tyndall moved into a residential re-entry center for 90 days. *Id.*

In June 2015—after he had moved out of the residential re-entry center, but while he was still on supervised release—Tyndall was arrested at a state parole office for possession of methamphetamine. *Id.* at 38. Despite this arrest, Tyndall remained on supervised release. Tyndall then violated the terms of his supervised release in September 2015 by failing to submit to urinalysis testing. Thereafter, over a five-week span between October and November of 2015, Tyndall tested positive for methamphetamine four times and failed to appear for urinalysis twice. *Id.* at 37–38.

2

Finally, in December 2015, Tyndall was arrested for possession of heroin. *Id.* at 39. He remained in state custody from December 2015 until March 2016. *Id.*

Upon Tyndall's release from state custody, the district court revoked Tyndall's supervised release and ordered him to serve three months' imprisonment, followed by two years of supervised release. *Id.* at 48–49. In part due to time already served, Tyndall's imprisonment ended on April 23, 2016, and he re-commenced supervised release. *Id.* at 50.

In late-October and early-November 2016, Tyndall tested positive for methamphetamine twice. *Id.* at 55. Because this violated the terms of his supervised release, Tyndall agreed to a new stipulation that he would not leave his home between 8 p.m. and 5 a.m. Yet, four days after this adjustment to his supervised release, a probation officer received an alert that Tyndall had left his home for multiple hours after 11 p.m. *Id.* at 56. The day after he left his home in violation of the terms of his supervised release, Tyndall tested positive for methamphetamine. *Id.*

A month after this positive test, the district court again revoked Tyndall's supervised release. *Id.* at 68–69. This time the district court sentenced Tyndall to five months' imprisonment, followed by two years of supervised release. *Id.*

Tyndall served the five months and left prison on May 7, 2017. *Id.* at 73. The conditions of Tyndall's supervised release stated that he "shall refrain from any use or possession of alcohol and/or other intoxicants." *Id.* at 74. He was to report to a residential re-entry center in Ft. Collins, Colorado. *Id.* When Tyndall arrived at the

3

residential re-entry center, he provided a urine sample, which showed that he had consumed alcohol. *Id.*

Seven weeks later, on June 27, 2017, Tyndall took a urine test that was positive for buprenorphine, and he admitted to using the pain medication suboxone. *Id.* On July 16, 2017, Tyndall's urinalysis showed that he had consumed alcohol again. *Id.* at 74–75. And on July 22, 2017, Tyndall's urinalysis was again positive for buprenorphine, and he again admitted to using suboxone. *Id.* at 75. In part because of these violations of his supervised release conditions, Tyndall was removed from the residential re-entry center on August 1, 2017. *Id.*; ROA, Vol. IV at 6. The next day, the district court issued a warrant for Tyndall's arrest, citing violations of his supervised release. ROA, Vol. I at 77.

Following Tyndall's arrest, the district court held a sentencing hearing to revoke Tyndall's supervised release and resentence him. The sentencing guideline range for Tyndall's offense was 5–11 months' imprisonment, and the parties agreed that two years was the statutory maximum length of imprisonment. The probation officer believed that Tyndall was at a high risk of re-offending on supervised release, and recommended that the district court sentence Tyndall to two years' imprisonment rather than a shorter term followed by a prolonged supervised release.

Tyndall asked for just eight months' imprisonment. He admitted that he "made some wrong choices," ROA, Vol. IV at 23, by consuming alcohol twice and using suboxone twice. But Tyndall argued that he only used the suboxone—which he did not have a prescription for—to treat back pain. Yet the probation office did not

4

have any paperwork indicating that Tyndall was scheduled to see a doctor to treat his back pain. *Id.* at 26–27. Further, Tyndall's probation officer pointed out that Tyndall's alleged back pain did not prevent him from working as a painter or asking for an extension to work more hours. *Id.*

The district court sentenced Tyndall to two years' imprisonment. ROA, Vol. I at 86–87. As mentioned, the parties agreed that this was the maximum term of imprisonment that the district court could have imposed. *See* 18 U.S.C. § 3583(e)(3). In a statement that covered four pages of the sentencing transcript, the district court explained that it was imposing the two-year sentence because Tyndall had shown through the two previous attempts at supervised release that such a program would not be effective. ROA, Vol. IV at 39–42 ("If a person does not pick up the tool and employ it as it is supposed to be employed, then there is no help for them.").

Tyndall now appeals his sentence, arguing that the imposition of a two-year term of imprisonment was unreasonable.

## II

We review the reasonableness of a sentence "under a deferential abuse-of-discretion standard and will reverse only if the sentence imposed was arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. DeRusse*, 859 F.3d 1232, 1236 (10th Cir. 2017) (quotation omitted). "Though district courts have broad discretion at sentencing, the sentence must be substantively reasonable." *United States v. Walker*, 844 F.3d 1253, 1255 (10th Cir. 2017). "Substantive

reasonableness focuses on the length of the sentence and requires that sentences be neither too long nor too short." *Id.*

Because "there are perhaps few arenas where the range of rationally permissible choices is as large as it is in sentencing," we often "defer to the district court's judgment so long as it falls within the realm of . . . rationally available choices." *DeRusse*, 859 F.3d at 1236 (quotation omitted). As long as the district court does not "exceed[] the bounds of permissible choice, given the facts and the applicable law in the case at hand," by doing something like making a clearly erroneous factual finding or coming to a clearly erroneous conclusion of law, the district court's sentence will not be an abuse of discretion. *Id.* (quotation omitted).

Here, the district court did not abuse its discretion when it sentenced Tyndall to two years in prison. The parties agree the sentence was within the statutorily permissible range and was supported by an articulation of the reasons for the sentence, *see* 18 U.S.C. § 3583(e)(3), so the district court did not commit any legal error. And Tyndall does not contest the facts underlying his multiple violations of his supervised release. At most, Tyndall argues his conduct toward the end of his supervised release shows that he was making progress, in that he was no longer addicted to methamphetamine, took suboxone only for back pain, and was gainfully employed. He argues that the district court instead focused solely on punishment. Yet, the district court believed that Tyndall's use of alcohol and suboxone indicated that he was still at risk of violating the conditions of supervised release, or even relapsing into methamphetamine use.

6

The district court's assessment of the situation was reasonable, and we conclude the district court did not abuse its discretion in sentencing Tyndall to two years' imprisonment. *See United States v. Dunbar*, 718 F.3d 1268, 1282 (10th Cir. 2013) ("It was eminently reasonable to believe, as the district court did, that Defendant would continue his criminal ways if not incarcerated because he had already squandered a chance . . . [to] follow[] the terms of supervision." (quotation omitted)).

## III

We therefore **AFFIRM** the district court.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

7