FILED
United States Court of Appeals
Tenth Circuit

December 4, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TYRONE VANKINTH HOLLAND, a/k/a
Tyrone Vankeith Holland,

    Defendant - Appellant.

No. 19-6045
(D.C. No. 5:18-CR-00149-F-1)
(W.D. Oklahoma)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

    Tyrone Vankinth Holland pleaded guilty to one count of being a felon in

possession of a firearm. The district court considered the sentencing factors under 18

U.S.C. § 3553(a), departed from the guideline range of 70–87 months, and sentenced

Mr. Holland to 120 months' imprisonment. Mr. Holland now appeals the substantive

reasonableness of his sentence, arguing that the district court failed to adequately

_____

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

consider his personal history and background. Exercising our jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I.    BACKGROUND

Mr. Holland was convicted of robbery with a dangerous weapon in the Oklahoma County District Court in 2009. He was discharged from prison in January 2017.

On April 15, 2017, Andrea Fields called the police to report an assault with a deadly weapon. Ms. Fields and her friend, Mr. Holland's girlfriend, had been arguing with each other about the girlfriend inviting Mr. Holland to Ms. Fields's house. While they were arguing, Mr. Holland pulled out a firearm and put it to his girlfriend's head. As Ms. Fields and the girlfriend left the house, Mr. Holland fired the firearm in their direction. Later, Mr. Holland called Ms. Fields on her friend's phone, threatening to "shoot up" Ms. Fields's house the next day. ROA, Vol. II at 6. When the police arrived, they recovered two 9mm shell casings from Ms. Fields's front yard.

On May 30, 2017, Courtney Coleman called the police to report an assault with a deadly weapon. Ms. Coleman had been staying at Stefanie Marie Johnson's house for two days. Mr. Holland was also present at the house. Ms. Coleman and Mr. Holland got into an argument, and Mr. Holland told Ms. Coleman to leave. Ms. Johnson, pregnant with Mr. Holland's child, tried to intervene. Mr. Holland then grabbed Ms. Coleman's and Ms. Johnson's cell phones, walked down the hallway, and returned with a firearm. Mr. Holland racked the slide and pointed the weapon at

Ms. Coleman, telling her to call a friend who had been there earlier. Mr. Holland threatened to beat Ms. Coleman if her friend did not come, and he further stated he had seventeen bullets that he intended to use to kill the friend. The argument continued outside, where Mr. Holland pointed the firearm at Ms. Coleman's seven-year-old son and said, "I'll kill every last one of you." ROA, Vol. II at 6. According to Ms. Coleman, Mr. Holland racked the slide several times but she was uncertain whether the firearm was loaded.

On June 12, 2017, Brandi Simpkins, also pregnant with Mr. Holland's child, called the police to report that her semi-automatic pistol had been stolen from her apartment. Mr. Holland had been living with Ms. Simpkins until she had asked him to leave. After Mr. Holland moved out, Ms. Simpkins discovered her firearm was missing. The police later discovered that Ms. Johnson and Mr. Holland had pawned Ms. Simpkins's pistol. The police recovered the pistol and confirmed that it had fired the two shell casings found in Ms. Fields's front yard in April of 2017.

On April 26, 2018, the police responded to a call that three rounds had been fired into the air from a residence driveway. The police learned that Mr. Holland had fired the shots. The caller also reported ongoing problems with Mr. Holland and her fear for her and her children's safety.

On May 20, 2018, Ms. Simpkins reported that Mr. Holland had stopped by her home to see his son. Ms. Simpkins refused to let Mr. Holland see the child, so Mr. Holland left. He later returned in an SUV and called Ms. Simpkins numerous times. As Mr. Holland began to leave, Ms. Simpkins heard gun shots. The police

found five .45 caliber shell casings at the scene. The police later located the SUV, detained Mr. Holland in a traffic stop, and found him in possession of a .40 caliber pistol.

On June 5, 2018, Mr. Holland was charged with two counts of knowingly possessing a firearm after conviction of a felony in violation of 18 U.S.C. § 922(g)(1). Count One charged Mr. Holland with possessing a firearm on or about April 15, 2017. Count Two charged Mr. Holland with possessing a firearm on or about May 30, 2017. Mr. Holland pleaded guilty to Count One. The United States Probation Office prepared a Presentence Investigation Report ("PSR") in which it calculated an advisory sentencing guideline of 70–87 months based on a total offense level of 25 and Mr. Holland's criminal history category of III. The Probation Office also suggested that the court consider an upward departure or upward variance based on Mr. Holland's under-represented criminal history and the § 3553(a) factors.

The PSR and Mr. Holland's sentencing memorandum detailed his difficult and traumatic childhood. Raised by a single working mother, Mr. Holland was often left with his older siblings, who brought others to their home and exposed Mr. Holland to drugs and alcohol at an early age. Mr. Holland began using drugs and alcohol around age ten or eleven. Gang violence was commonplace in Mr. Holland's neighborhood. Mr. Holland recalled fleeing from drive-by shootings and stumbling upon dead bodies in fields as a child. Mr. Holland was incarcerated as a young adult from 2008 to 2017 for robbery with a dangerous weapon.

In his sentencing memorandum, Mr. Holland acknowledged the seriousness of his crimes but argued that a sentence within the advisory guideline would be appropriate, as opposed to an upward departure or variance, because people of his age are less likely to re-offend. Mr. Holland also submitted two character letters for the court to consider.

After considering the § 3553(a) factors, the district court determined an upward variance was warranted and sentenced Mr. Holland to the statutory maximum of 120 months. The court cited the need for incapacitation as the most prominent § 3553(a) factor in Mr. Holland's case. Most striking to the court was Mr. Holland's propensity to focus his violent and dangerous conduct on those weaker and more vulnerable than him. When Mr. Holland's counsel asked the court to elaborate on the court's consideration of Mr. Holland's history and characteristics under § 3553(a)(1), the court pointed to Mr. Holland's quick reversion to violent and dangerous conduct following his release from prison and his tendency to focus that conduct on individuals who are weak and vulnerable as aggravating factors that differentiate him from other generally violent defendants. Ultimately, the court determined that the upward variance was sufficient but not greater than necessary to achieve the statutory objectives of sentencing.

## II. STANDARD OF REVIEW

We review the substantive reasonableness of a sentence for abuse of discretion. *Gall v. United States,* 552 U.S. 38, 51 (2007); *United States v. Chavez,* 723 F.3d 1226, 1233 (10th Cir. 2013). We "will reverse only if the sentence imposed

5

was arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. DeRusse*, 859 F.3d 1232, 1236 (10th Cir. 2017) (internal quotation marks omitted). In other words, "we will reverse a determination only if the court exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." *Id.* (quotation marks omitted). Yet, "we uphold even substantial variances when the district court properly weighs the § 3553(a) factors and offers valid reasons for the chosen sentence." *United States v. Barnes*, 890 F.3d 910, 916 (10th Cir. 2018). "A district court properly engages in this inquiry when it bases its decision on specific, articulable facts supporting the variance and does not employ an impermissible methodology or rely on facts that would make the decision out of bounds." *Id.*

Due to the district court's superior position to find facts, we "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. The keystone of our analysis is "the adequacy of the court's consideration and explanation of the § 3553(a) factors." *Barnes*, 890 F.3d at 916. "We look to the record to determine whether the district court satisfactorily engaged and examined the factors in a holistic fashion." *Id.* "We do not reweigh the sentencing factors but instead ask whether the sentence fell within the range of rationally available choices that facts and the law at issue can fairly support." *United States v. Blair*, 933 F.3d 1271, 1274 (10th Cir. 2019) (internal quotation marks omitted).

### III.     ANALYSIS

On appeal, Mr. Holland contends the district court failed to adequately consider his personal history and background, especially his difficult childhood, when the court varied from the calculated guideline range and sentenced Mr. Holland to 120 months imprisonment. We find no abuse of discretion. The district court not only considered Mr. Holland's personal history and background but also based the variant sentence on specific, articulable facts.

To begin, the record indicates that the district court considered Mr. Holland's difficult childhood. At sentencing, the district court specifically stated it had considered the sentencing memorandum and attached letters, which outlined Mr. Holland's difficult childhood and background. Mr. Holland's counsel also summarized Mr. Holland's difficult childhood before the court during the sentencing hearing.

Admittedly, the court made no specific mention of Mr. Holland's childhood in its analysis of the § 3553(a) factors. Rather, in its discussion of Mr. Holland's history and characteristics, the court focused on the defendant's record of violent crime, beginning more than ten years prior, and continuing upon his release from prison. When asked to elaborate on Mr. Holland's history and characteristics, the court noted Mr. Holland's 2008 conviction for robbery with a dangerous weapon, quick reversion to violence upon his release from prison, and tendency to direct his violence toward the weak and vulnerable as particularly persuasive. Although the district court did not expressly address the impact of Mr. Holland's childhood in its analysis, it

7

acknowledged its review of this evidence and listened to defense counsel's related argument.

Under these circumstances, we decline to reweigh this factor. The district court satisfactorily engaged in a holistic review of the § 3553(a) factors and based its decision to vary upward on specific articulable facts. *See Barnes*, 890 F.3d at 916. In particular, the district court identified Mr. Holland's involvement in numerous incidents of gun violence against women—some of whom were pregnant—and children. The court found that prevention of future incidents through incapacitation strongly supported the upward variance. The court did not abuse its broad discretion in finding that the § 3553(a) factors, as a whole, justify a 120-month sentence.

## IV.    CONCLUSION

We accordingly uphold the sentence and **AFFIRM** the district court's judgment.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

8