FILED
United States Court of Appeals
Tenth Circuit

**June 24, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NEZJONEIL NIKKOLO MARRIS,

    Defendant - Appellant.

No. 25-7086
(D.C. No. 6:24-CR-00106-RAW-1)
(E.D. Okla.)

_____

### ORDER AND JUDGMENT*
_____

Before **MORITZ**, **BALDOCK**, and **EID**, Circuit Judges.**
_____

After shooting his victim L.F. near point blank range and rendering her a paraplegic, Defendant Nezjoneil Marris, an enrolled member of the Chickasaw Nation, was charged in a nine-count federal indictment with (1) use of a vehicle to facilitate the intentional discharge of a firearm in Indian Country (Count I), (2) assault with intent to commit murder in Indian Country (Counts II & VI), (3) assault with a dangerous weapon with intent to do bodily harm in Indian Country (Counts III & VII),

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

\** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

(4) assault resulting in serious bodily injury in Indian Country (Counts IV & VIII), and (5) discharge of a firearm during and in relation to a crime of violence (Counts V & IX).  Defendant subsequently entered into a plea agreement with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A).  In exchange for the Government's dismissal of all remaining counts, Defendant agreed to plead guilty to one count (Count V) of discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

Defendant's advisory guidelines sentence was 10-years' imprisonment, the mandatory minimum for a § 924(c)(1)(A)(iii) violation.  U.S.S.G. § 2K2.4(b) (2024).  The maximum sentence for such violation is life imprisonment.  *United States v. Dominguez*, 998 F.3d 1094, 1114 (10th Cir. 2021) ("[T]he maximum sentence for all § 924(c) offenses is life imprisonment.").  Prior to sentencing, the Government moved for an upward variance to 20-years' imprisonment.  The district court granted the motion in part, varied upward seven years, and sentenced Defendant to 17-years' imprisonment.  Defendant now seeks to appeal the substantive reasonableness of his sentence.  Our jurisdiction arises under 18 U.S.C. § 3742(a).  Presently before the Court is appointed defense counsel's *Anders* brief as well as his motion to withdraw as counsel and dismiss this appeal.  *See Anders v. California*, 386 U.S. 738 (1967). [1]

---

[1]  In *Anders*, the Supreme Court held that if appointed counsel "finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw."  386 U.S. at 744.  Counsel must submit to the court a brief "referring to anything in the record that might arguably support an appeal."  *Id.*  When counsel submits an *Anders* brief accompanied by a motion to withdraw, we "conduct a full examination of the record to determine whether

Having independently reviewed the entire record as well as defense counsel's *Anders* brief (to which Defendant has failed to respond), we agree with counsel that no nonfrivolous basis for Defendant's sentencing appeal appears in the record. Accordingly, we grant counsel's motion to withdraw and dismiss the appeal.[2]

I.

The historical facts of this case are tragic. According to the undisputed presentence report (PSR), Defendant shot the victim, L.F., on March 26, 2022. L.F. reported that while retrieving ice for a party out of the backseat of a parked vehicle, she heard a voice say, "hey ma." L.F. turned around and saw Defendant, with whom she was familiar. Defendant had just pulled beside her in a vehicle he was driving. Defendant said, "this is for Notty G.," and shot L.F. at close range with a handgun. According to L.F., she had served as a drug courier to Notty G. years before. L.F. believed Notty G. had paid Defendant to shoot her.

The injuries L.F. received as a result of the shooting were extensive. Again, according to the PSR, L.F. sustained a wound to her torso and spine. Other injuries included a rib fracture, lower lobe pulmonary laceration, a liver laceration, a "T10

---

defendant's claims are wholly frivolous." *United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005). If we agree with counsel's evaluation of the case, we grant the request to withdraw and dismiss the appeal. *Anders*, 386 U.S. at 744.

[2] Defendant's plea agreement contains an appeal waiver wherein, aside "from a sentence which exceeds the statutory maximum," he "waives the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a)." Because the Government has not moved to enforce the appeal waiver, we will not consider it. *See Calderon*, 428 F.3d at 930.

burst" fracture, a small intestine injury, and a bilateral diaphragm laceration. A T10 burst fracture is a type of spinal injury where the T10 vertebra, located in the middle of the back, is fractured due to excessive force, compressing the spinal cord and causing the bone to shatter.

At the sentencing hearing, L.F. testified that Defendant's crime has "caused irreversible and permanent harm to every part of my life." Sent'g Tr. at 14. L.F. stated her doctors have informed her that she has only a ten percent chance of ever walking again. L.F. has undergone multiple surgeries as a result of the shooting and faces the prospect of additional medical procedures. She suffers from chronic pain and is no longer able to perform basic daily tasks such as bathing without assistance. In addition to her physical health, the shooting has also taken its toll on L.F.'s mental health: "The constant pain, loss of mobility, and the dependence on others has left me with feelings of helplessness, grief and despair. . . . This ongoing mental anguish affects my quality of life, my relationships and my overall ability to function." *Id.* at 12–13. L.F. noted the relationship with her children and grandchildren had suffered as she is no longer able to interact with and care for them like she had before the shooting. L.F. further testified the financial impact of Defendant's crime has been devastating: "This crime has stripped me of my financial independence, left me in debt, and destroyed my ability to earn a living or provide for my future." *Id.* at 14. L.F. explained that before the shooting she had worked nearly ten years as a shop mechanic for Michelin, earning approximately $30 an hour. L.F. asked the court to impose a sentence on Defendant "of no less than twenty years to life incarceration." *Id.* at 16.

4

In pronouncing sentence, the district court recognized its authority to vary from the mandatory minimum 10-year sentence called for by § 924(c)(1)(A)(iii) and the advisory sentencing guidelines. The court acknowledged the violent nature of Defendant's crime and the physical, psychological, and financial injuries L.F. suffered as a result. The court also pointed to Defendant's lengthy history of violent crimes. Defendant's record included convictions for first degree robbery, felonious pointing of a firearm, felon in possession of a firearm, possession of methamphetamine with intent to distribute, and three instances of domestic violence. The court then granted the Government's motion for an upward variance in part. Taking into express consideration Defendant's history and characteristics, the nature and circumstances of his offense, and the need for his sentence to provide just punishment, promote respect for the law, afford adequate deterrence, and protect the public from further crimes, the court concluded an upward variance from the mandatory minimum 10-year sentence of imprisonment to a sentence of 17-years' imprisonment based on the 18 U.S.C. § 3553(a) sentencing factors was appropriate.[3]

---

[3] In determining the particular sentence to be imposed, 18 U.S.C. § 3553(a) directs the district court to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence to (a) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, (b) afford adequate deterrence to criminal conduct, (c) protect the public form further crimes of the defendant, and (d) provide the defendant with the proper educational, vocational, medical, and other correctional treatment, (3) the available sentencing options, (4) pertinent policy statements of the Sentencing Commission, (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (6) the need to provide restitution to victims of the offense.

II.

Our careful review of this matter satisfies us that Defendant has no nonfrivolous grounds on which to challenge the substantive (or procedural) reasonableness of his sentence. We review a criminal sentence for reasonableness under an abuse of discretion standard. *United States v. Jackson*, 82 F.4th 943, 949 (10th Cir. 2023). The reasonableness of a sentence has both a procedural and substantive component.[4] *Id.* The procedural inquiry is whether the district court committed procedural error, "such as [1] failing to calculate (or improperly calculating) the Guidelines range, [2] treating the Guidelines as mandatory, [3] failing to consider the § 3553(a) factors, [4] selecting a sentence based on clearly erroneous facts, or [5] failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). The substantive inquiry, on the other hand, requires us to consider whether the sentence's length is reasonable given all the circumstances of the case in view of the § 3553(a) factors. *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008).

The questions of procedural and substantive reasonableness inevitably overlap when a sentencing challenge is based on the district court's explanation of the § 3553(a) factors. *United States v. Guevara-Lopez*, 147 F.4th 1174, 1183 (10th Cir.

---

[4] Procedural objections to a sentence that a defendant fails to raise in the district court are forfeited and, at best, subject to plain error review on appeal. *United States v. Rocha*, 145 F.4th 1247, 1261 (10th Cir. 2025). Conversely, a defendant need only advocate for a shorter sentence in the district court to preserve a claim that the sentence is unreasonably long, *i.e.*, substantively unreasonable. *Id.*

2025).   A district court's explanation for a particular sentence "implicates both procedural and substantive reasonableness because the explanation is a procedural requirement and is relevant to whether the length of the sentence is substantively reasonable." *Id.* (internal emphasis and quotations omitted).  Here, the district court's explanation for the challenged sentence assists us in determining whether the court abused its discretion in weighing the § 3553(a) factors and therefore pronounced a substantively unreasonable sentence. *United States v. Barnes*, 890 F.3d 910, 917 (10th Cir. 2018); *see also Guevara-Lopez*, 147 F.4th at 1184 ("A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable.").

Because the district court recognized the Sentencing Guidelines are advisory, properly calculated Defendant's advisory guidelines range, and selected a sentence based on the undisputed facts contained in Defendant's PSR, Defendant could not base a sentencing appeal on any ground other than the court's explanation of why its application of the § 3553(a) factors to the particulars of his case justified the sentence imposed.  Our careful review of the record in this case, however, reveals the district court adequately explained why the § 3553(a) factors justified a sentence significantly above the 10-year mandatory minimum in this case, and why a 17-year sentence of imprisonment is appropriate given all the circumstances of the case in view of the § 3553(a) factors.  In other words, in imposing a sentence on Defendant of 17-years' imprisonment, the court did not "exceed[] the bounds of permissible choice given the

facts and applicable law in the case at hand." *United States v. DeRusse*, 859 F.3d 1232, 1236 (10th Cir. 2017) (internal quotations omitted).

In particular, the court emphasized the violent, serious nature of Defendant's undoubtedly premeditated crime, and the extensive injuries—physical, emotional, and financial—that his victim, L.F., suffered as a result of the shooting. The court also emphasized the violent nature of Defendant's criminal history. The court further opined that Defendant's sentence was necessary to provide just punishment, promote respect for the law, afford adequate deterrence, and prevent him from committing more crimes. While the district court at sentencing did not expressly mention every factor listed in § 3553(a), we have never required a district court to do so, even in the case of an upward variance. Affirming a sentence above the applicable guidelines range in *United States v. Cordova*, 461 F.3d 1184, 1189 (10th Cir. 2006), we explained: "The sentencing court . . . is not required to consider individually each factor listed in § 3553(a), nor is it required to recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider before issuing a sentence." (internal quotations omitted); *see also United States v. Perez*, 802 F. App'x 408, 414–15 (10th Cir. 2020) (unpublished) (rejecting defendant's argument that "by mentioning only the need for protection of the public, the district court failed to weigh holistically the § 3553(a) factors," in turn rendering its upward variance substantively unreasonable).

At sentencing, Defendant argued for a guidelines sentence of 10-years' imprisonment, the mandatory minimum, claiming the facts were insufficient to support

the Government's motion for an upward variance. Defendant did not elucidate, however, what those facts were or why they were insufficient. Avoiding the heinous details of the particular crime to which he pleaded guilty, Defendant summarily concluded his criminal history did not "make[] him any different than other similarly situated defendants who have been charged with his crime." Sent'g Tr. at 7. But "hand-waving or conclusory statements" are not enough to establish the likelihood of a sentencing disparity. *Verdin-Garcia*, 516 F.3d at 898. Moreover, the district court satisfied its duty to consider sentencing disparities when it correctly calculated the guidelines range and explained the need for a sentence above that range. *United States v. Dias*, 174 F.4th 1266, 1282 (10th Cir. 2026). "So even where a district court does not explicitly discuss the potential for unwarranted sentencing disparities, it does not abuse its discretion unless if fails to provide an explanation that justifies the extent of the significant upward variance." *Id.* (internal brackets and quotations omitted).

\* \* \*

Because no basis exists in the record to argue the district court abused its discretion in weighing the § 3553(a) factors or by failing to adequately explain why it sentenced Defendant to 17-years' imprisonment, we grant defense counsel's motion to withdraw from the case and dismiss this appeal.

MOTION TO WITHDRAW GRANTED; APPEAL DISMISSED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

9