**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 16, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

RAYMOND A. BARNES,

Defendant - Appellee.

-----------------------------------------

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

CHRISTOPHER A. BROWN,

Defendant - Appellee.

No. 17-7016

No. 17-7017

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 6:13-CR-00017-RAW-1 and 2)**

---

April J. Anderson, Attorney (John M. Gore, Acting Assistant Attorney General, and Bonnie I. Robin-Vergeer, Attorney, with her on the briefs), United States Department of Justice, Civil Rights Division, Appellate Section, Washington, D.C., for Appellant.

Barry L. Derryberry, Assistant Federal Public Defender (Julia L. O'Connell, Federal Public Defender, with him on the brief), Office of the Federal Public Defender, Tulsa, Oklahoma, for Appellee Barnes.

Jimmy L. Hopkins, Tahlequah, Oklahoma, for Appellee Brown.

_____

Before **TYMKOVICH**, Chief Judge, **MATHESON**, and **BACHARACH**, Circuit Judges.

_____

**TYMKOVICH**, Chief Judge.

_____

This is the second appeal arising from crimes committed by two corrections officers, Raymond Barnes and Christopher Brown, while employed at the Muskogee County Jail. The government argues the sentences the district court imposed after we remanded for resentencing are substantively unreasonable. Because we find the district court did not abuse its discretion in granting a downward variance from the United States Sentencing Guidelines, we affirm.

## I. Background

Barnes and Brown both held administrative roles at the Muskogee County Jail. Barnes served as the Jail Superintendent and Brown worked alongside him as the Assistant Jail Superintendent. Our previous opinion extensively recounted the abuse both Barnes and Brown perpetrated on the jail's inmates. *See United States v. Brown*, 654 F. App'x 896, 900–902 (10th Cir. 2016) (unpublished). In short, both defendants physically abused prisoners in a variety of ways, engaged in excessive force against inmates, and intimidated other jail employees to conceal their illicit activities.

Authorities charged Barnes and Brown with three counts of assaulting or conspiring to assault prisoners at the jail. In 2014, a jury convicted both of various charges. The jury convicted Barnes of one count of conspiracy to violate constitutional rights and two counts of deprivation of rights under color of law. *See* 18 U.S.C. §§ 241, 242. The jury found Brown, on the other hand, guilty of one count of conspiracy to violate constitutional rights, one count of deprivation of rights under color of law, and one count of making a false statement to a federal agent. *See* 18 U.S.C. § 1001. The district court sentenced Barnes to twelve months' imprisonment followed by twenty-four months of supervised release. Brown received a sentence of six months' imprisonment followed by thirty-six months of supervised release.

In the first appeal, Barnes and Brown challenged their convictions. The government cross-appealed, arguing both sentences were procedurally and substantively unreasonable. We affirmed the convictions, but vacated the sentences as procedurally unreasonable because the district court had not adequately explained the basis for the sentences imposed. *Brown*, 654 F. App'x at 900. Since we resolved the case on procedural unreasonableness, we declined to reach the government's argument that the sentences were substantively unreasonable.

On remand, the district court held a hearing, took additional testimony from witnesses, and heard arguments about the appropriateness of a variance. The

court concluded it would not apply the advisory guidelines range of 70 to 87 months and granted a variance to each defendant. Accordingly, the court resentenced Barnes to twenty-four months of imprisonment followed by twenty-four months of supervised release. The court also gave Brown a new sentence of twelve months' imprisonment followed by thirty-six months of supervised release. All told, the district court doubled each of their terms of imprisonment.

The government again appeals, arguing the new sentences are substantively unreasonable. We affirm. The district court did not abuse its discretion in applying the relevant sentencing factors as reflected in its explanation of the sentences based on defendant-specific facts and circumstances.

## II. Analysis

The government contends the district court abused its sentencing discretion by imposing too lenient a sentence on both defendants. The government urges us to find the sentences substantively unreasonable.

### A. Substantive Reasonableness

We review a district court's sentencing determination for substantive unreasonableness by considering whether the sentence "is unreasonable given the totality of the circumstances in light of the 18 U.S.C. § 3553(a) factors." *United States v. Caiba-Antele*, 705 F.3d 1162, 1165 (10th Cir. 2012). We review a sentence's length for abuse of discretion. *United States v. Walker*, 844 F.3d 1253, 1255 (10th Cir. 2017). A district court abuses its sentencing discretion only if the

sentence "'exceeded the bounds of permissible choice.'" *United States v.*

*McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (quoting *United States v. Ortiz*,

804 F.2d 1161, 1164 n.2 (10th Cir. 1986)).  We "will reverse only if the sentence

imposed was 'arbitrary, capricious, whimsical, or manifestly unreasonable.'"

*United States v. DeRusse*, 859 F.3d 1232, 1236 (10th Cir. 2017) (quoting *United*

*States v. Gantt*, 679 F.3d 1240, 1249 (10th Cir. 2012)).

When determining a sentence, a court must consider the seven statutory

factors set forth in § 3553(a).  The factors include:

> 1.      The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> 2.      the need for a sentence to reflect the seriousness of the crime, deter future criminal conduct, prevent the defendant from committing more crimes, and provide rehabilitation;
>
> 3.      the sentences that are legally available;
>
> 4.      the Sentencing Guidelines;
>
> 5.      the Sentencing Commission's policy statements;
>
> 6.      the need to avoid unwarranted sentence disparities; and
>
> 7.      the need for restitution.

*See* 18 U.S.C. § 3553(a) (1–7).

We give substantial deference to the district court's weighing of these

factors.  "The sentencing judge is in a superior position to find facts and judge

their import under § 3553(a) in the individual case." *Gall v. United States*, 552 U.S. 38, 51 (2007). "The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Id.* "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.* at 52. In short, "the uniqueness of the individual case . . . does not change the deferential abuse-of-discretion standard of review that applies to all sentencing decisions." *Id.*

And when we review a downward variance from the recommended guidelines range, as we do here, even more solicitude to the sentencing court is appropriate. A "downward variance is based simply on the district court's *discretionary authority* to consider 'the nature and circumstances of the offense'" and select "'a sentence sufficient, but not greater than necessary,' to comply with all of the purposes of sentencing." *See DeRusse*, 859 F.3d at 1237 (quoting 18 U.S.C. § 3553(a)) (emphasis added).

In addition, our review must acknowledge that sentencing courts can and should "engage in a holistic inquiry of the § 3553(a) factors." *See United States v. Lente*, 759 F.3d 1149, 1174 (10th Cir. 2014) (quoting *United States v. Lopez-Macias*, 661 F.3d 485, 492 (2011)). A district court properly engages in this

-6-

inquiry when it bases its decision on specific, articulable facts supporting the variance and does not employ an impermissible methodology or rely on facts that would make the decision out of bounds. *DeRusse*, 859 F.3d at 1236.

For these reasons, we uphold even substantial variances when the district court properly weighs the § 3553(a) factors and offers valid reasons for the chosen sentence.

Consider, for example, *DeRusse*, where, we upheld a substantial variance from a 108–135 months guidelines range down to 70 days already served. In so holding, we rejected the government's suggestion that a "variance based on the district court's discretionary authority should be constrained by . . . the specific requirements listed in [the] guideline . . . ." *Id.* at 1237. "A variance," we explained, "can be imposed without compliance with the rigorous requirements for departures." *Id.* (quoting *Gantt*, 679 F.3d at 1247).

Rather than looking to compliance with the Guidelines, we looked instead to whether the district court properly weighed all the § 3553(a) factors. We concluded it had, ultimately agreeing with the district court that the crime represented "aberrational" behavior that was partially attributable to mental health issues for which the defendant was receiving treatment. *Id.* at 1240. Although we would likely not have "reached the same sentencing decision in the first instance," we concluded the court did not abuse its substantial discretion in choosing the sentence. *Id.* at 1241.

In short, then, the adequacy of the court's consideration and explanation of the § 3553(a) factors is the keystone of our analysis. We look to the record to determine whether the district court satisfactorily engaged and examined the factors in a holistic fashion. But the court need not rely on every single factor—no algorithm exists that instructs the district judge how to combine the factors or what weight to put on each one.

The distinction between procedural and substantive reasonableness is a significant but not necessarily sharp one, especially as it concerns a sentencing court's explanation for the sentence. That explanation serves both procedural and substantive functions.

First, just as a court's consideration of the § 3553(a) factors is a procedural requirement, so is its explanation of how those factors apply. In fact, the explanation is the procedural step that shows the factors have been considered. In *Gall*, the Supreme Court said "failing to adequately explain the chosen sentence" can be "a significant procedural error." 552 U.S. at 51. In this appeal, the government does not challenge the sentences' procedural reasonableness. Aple. Reply Br. at 3 ("To be clear, the United States is not arguing that the district court failed to adequately explain its reasons—*i.e.*, that it made procedural errors . . . .").

Second, the content of the district court's explanation is relevant to whether the length of the sentence is substantively reasonable. To determine substantive

reasonableness, *Gall* instructs that we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." 552 U.S. at 51. Part of that deference extends to the court's analysis of the § 3553(a) factors. *See United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008) (holding appellate courts must grant deference "not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings."). A sentence is more likely to be within the bounds of reasonable choice when the court has provided a cogent and reasonable explanation for it.

This dual purpose of the court's sentencing explanation is one reason the line between procedural and substantive reasonableness is blurred. *See United States v. Reyes-Santiago*, 804 F.3d 453, 468 n.19 (1st Cir. 2015) ("The line between procedural and substantive sentencing issues is often blurred. . . . [and] 'the lack of an adequate explanation can be characterized as either a procedural error or a challenge to the substantive reasonableness of the sentence.'") (quoting *United States v. Crespo-Ríos*, 787 F.3d 34, 37 n.3 (1st Cir. 2015) (internal quotation marks and brackets omitted)); *see also United States v. Liou*, 491 F.3d 334, 337 (6th Cir. 2007) ("[T]he border between factors properly considered 'substantive' and those properly considered 'procedural' is blurry if not porous . . . .").

Below, we consider the explanation given for the challenged sentences to assist us in determining whether the district court abused its discretion in weighing the § 3553(a) factors—and thus whether the sentences are *substantively* reasonable. *See United States v. Rentz*, 696 F. App'x 348, 352 (10th Cir. 2017) (unpublished) ("[B]oth the record and the district court's stated reasoning provide us an adequate basis to assess the substantive reasonableness of the sentence imposed."). The dissent argues that in considering the district court's explanation, we rely "on a rationale that instead fits the inquiry for *procedural* reasonableness." Dissent at 7. But while courts should avoid unduly blurring the line between substantive and procedural reasonableness, there is nevertheless some unavoidable overlap. *See United States v. Jeter*, 721 F.3d 746, 756 (6th Cir. 2013) ("[C]laims of substantive and procedural reasonableness overlap in that they both concern whether the district court properly considered certain § 3553(a) factors.").

With these considerations in mind, we turn to the district court's sentencing analysis in this case.

### 1. *Barnes*

The district court properly addressed each of the § 3553(a) factors in sentencing Barnes.

First, the court based its sentence on the trial record itself, witness testimony at the resentencing hearing, and statements and other submissions from

members of Barnes's family, co-workers, and friends. The court then walked through the sentencing factors contained in § 3553(a), observing that despite the stressful environment where Barnes worked, "there [was] no justification for the actions which resulted in [his] conviction." App. 609. Even so, the district court considered Barnes to be a poor candidate for a guidelines sentence. He was age 46 at sentencing, and married with three children. In addition, he was raising four nieces and nephews he took custody of after his sister died (the father, who is in the country illegally, was unable to care for them). At the time of resentencing, his natural children were aged 14, 20, and 21, and the other children were 11, 15, 16, and 17. The record reflects that his sister's children were performing better in school and socially since Barnes and his wife took custody.

Barnes was also fighting tongue cancer and had other health problems which required "14 medications daily." *Id*. at 610–611. Prior to sentencing, Barnes had led "a stable lifestyle and appear[ed] active in his community." *Id*. The court concluded Barnes's risk of recidivism would be "low to nonexistent and he posed no apparent threat to the community." *Id*. at 611. Barnes had not been convicted of previous crimes, and the district court considered its two-year prison sentence "significant time"—especially coupled with supervisory release.

Considering the seriousness of the crime and deterrence, the court adequately reviewed the significant impact the sentence would have on Barnes's career and family as well as on similarly situated officers. Overall, the court

determined "the sentence imposed will provide specific and general deterrence to any future anti-social behavior of this defendant and others, especially those in law enforcement." *Id.* at 611–612. The court reached this conclusion after a thorough discussion of the defendant's specific situation—he would no longer be able to work in law enforcement, and, we note, would face all the ancillary consequences attending a felony conviction. The court further reasoned the sentence would properly deter similarly-situated "Law Enforcement Officers or Corrections Officers who learn of the facts surrounding this case and may be tempted to engage in similar conduct." *Id.* at 612.

In sum, the district court thoroughly supported its variance with an analysis of the § 3553(a) factors. The court had "taken notice of the advisory guideline range" and could not "find that a sentence within that advisory range is necessary to comport with the factors identified in United States Code Section 3553(a) and to achieve the overall goal of sentencing." *Id.* After considering the guidelines factors as a whole, the court decided to vary downward from the guidelines range to comport with the broader goals of sentencing. In view of its careful discussion, we find that the court did not abuse its discretion in considering and justifying a variance based on the § 3553(a) factors.

## 2. *Brown*

The district court also properly addressed each of the § 3553(a) factors for Brown.

First, the court considered the trial testimony concerning Brown's culpability and took additional testimony at the sentencing hearing. The court then noted that Brown was not the ringleader of the assaults. In fact, "the majority of witnesses [at trial] testified that they did not observe Brown assault any inmates, nor did they hear him give orders to any other staff instructing them to assault or mistreat the inmates." *Id.* at 652. Reviewing Brown's personal characteristics, the court observed that Brown has no criminal record, "maintains a stable lifestyle with no documented substance abuse or other anti-social behavior," has "five minor children," and exhibits a "low to nonexistent" risk of recidivism. *Id.* The court thus explicitly detailed why Brown's personal attributes and dependent-heavy family structure might mitigate the need for a standard guidelines sentence.

Recognizing the seriousness of the crime and the need for deterrence, the court noted that it was imposing "a significant portion of imprisonment followed by a period of Supervised Release"; Brown would no longer be able to work in law enforcement; and his family had already been and "[would] continue to be significantly impacted." *Id.* at 652–653. The court found "[n]othing in the defendant's background . . . suggest[ing] that a sentence within the advisory

-13-

guideline range is needed to deter him from any further law violations or misconduct." *Id.* at 653. The court was also confident the selected sentence would deter Brown from future crime and other officers from "similar misconduct." *Id.*

In discussing the remaining § 3553(a) factors and "the sentencing options available for this defendant," the court could not "find that a sentence within that advisory range is necessary to comport with the factors identified in [the guidelines] and to achieve the overall goal of sentencing." *Id.* at 653–654. The court thought the combination of prison time and supervised release, along with the mitigating circumstances in Brown's personal history, warranted a sentence of 12 months' incarceration and three years of supervised release.

As in its analysis of Barnes's sentence, then, the court holistically considered the § 3553(a) factors and supported its analysis with facts specific to Brown's situation. The court did not rely on impermissible factors or rely exclusively on one factor. We thus find the court did not abuse its discretion in justifying its variance in Brown's sentence as well.

### B. The Government's Arguments

The government points to several cases where we have found low sentences to be substantively unreasonable: *United States v. Friedman*, 554 F.3d 1301 (10th Cir. 2009), *United States v. Walker*, 844 F.3d 1253 (10th Cir. 2017), and *United*

*States v. Morgan*, 635 F. App'x 423 (10th Cir. 2015) (unpublished). The government argues these cases control the outcome of this case. We are not persuaded these cases compel reversal of the sentences here.

In *Friedman*, the defendant pleaded guilty to bank robbery, and his guidelines range was 151 to 188 months. 554 F.3d at 1302, 1308. The district court varied downward to a sentence of 57 months. We concluded the sentence was substantively unreasonable because "(1) the defendant had an extensive history of recidivism and lacked remorse and (2) the 57-month sentence created unwarranted sentence disparities." *Walker*, 844 F.3d at 1259 (summarizing *Friedman*, 554 F.3d at 1307–14). Friedman admitted to committing eight bank robberies, and at least two of the "robberies involved weapons or the threat of weapons." *Friedman*, 554 F.3d at 1309. Friedman himself acknowledged he had "only been able to remain free of prison for twenty months out of the twenty-seven years of his adult life." *Id.* Nothing in Friedman's record of consistent reversion to crime suggested that he would not again return to a life of crime.

Yet in the face of these strong indications of a propensity to recidivate, the district court provided no specific facts to support its conclusion that the defendant would not be prone to recidivism. Instead, the judge cited only "a feeling about [him] that [he] can make it and [he's] going to." *Friedman*, 554

F.3d at 1307. Because the court did not cite to any specific facts supporting its conclusion, we concluded the sentence was arbitrary and capricious.

Here, in contrast, the district court set forth concrete reasons why it would vary below the Guidelines. Since the court rooted its decision in specific, permissible facts particular to each defendant, *Friedman* does not compel a contrary conclusion.

Similarly, *Walker* considered a sentence for two counts of bank robbery that had been reduced from a range of 151–188 months to 33 days of time-served in pretrial detention. We found the sentence substantively unreasonable because the district court failed to weigh the § 3553(a) factors holistically, instead relying "almost exclusively" on one factor—Walker's "newfound sobriety"—to justify the sentence. *Walker*, 844 F.3d at 1259.

That is far from the case before us now. Here, the court carefully addressed each factor and concluded its assessment of all of the factors counseled a downward variance for each defendant. While it is doubtful we would have weighed or applied the factors the same way in this case given the seriousness of the crimes, on balance, the court did not impose sentences outside permissible choice.[1]

---

[1] The government and the dissent both cite to *United States v. Koon,* 518 U.S. 81, 110 (1996)*,* for the proposition that the district court should not consider the permanent loss of law-enforcement careers when varying from the Guidelines. But *Koon* involved a downward *departure* rather than a downward *variance*. This

(continued...)

Finally, in *Morgan*, we reversed a downward variance from a range of 41–51 months to five years of probation for a politician convicted of bribery. "[T]he court's decision to vary downward to probation was based on the following: (1) seriousness of the offense, (2) the letters of support, and (3) deterrence." 635 F. App'x at 448. We found the district court "paid only lip service to the seriousness of the offense" because it explained its "fair sentence" could be "reached by first calculating the guideline sentence based on the crime of conviction (Count 63) and then dividing it by 63, the total number of counts, including the mistried and acquitted counts . . . ." *Id.* By proffering this rationalization, the district court mitigated the seriousness of the convicted offense with the mistried and acquitted counts, which should not have made the convicted count any less blameworthy. This sentencing methodology was arbitrary and considered impermissible factors, making the sentencing substantively unreasonable. The court similarly placed undue emphasis on supporting letters while overly discounting the need for deterrence.

---

[1](...continued)

distinction is important because *Koon* predated *Booker v. United States*, 543 U.S. 220 (2005), which made the sentencing guidelines advisory rather than mandatory and "allow[ed] district courts to exercise discretion to vary from the guideline range if a variance would be appropriate under the § 3553(a) factors." *United States v. Beltran*, 571 F.3d 1013, 1019 (10th Cir. 2009). A downward departure must conform to the Guidelines and give a specific basis for why the Guidelines do not properly account for the defendant's situation. A variance, on the other hand, is based entirely on the sentencing court's discretionary authority as long as the court justifies its sentence based on the § 3553(a) factors.

In sum, we found the court's sentence substantively unreasonable in *Morgan* because the court considered impermissible factors and failed to consider an important factor: general deterrence. In the present case, however, the district court did not rely on impermissible factors, nor did it fail to consider any important factors.

Thus, none of the cases the government cites calls into question our conclusion here.

The government further suggests the district court could not justify a variance by relying on facts that the Guidelines already took into account. But that suggestion is mistaken. "[U]nder current precedent '[d]istrict courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range.'" *Lente*, 759 F.3d at 1169 (quoting *United States v. Yanez-Rodriguez*, 555 F.3d 931, 946 (10th Cir. 2009)).

We make one final note on the dissent's thoughtful but overly complex approach in reaching a contrary conclusion. The dissent maps sentences for convictions under §§ 241 and 242 onto a histogram in order to show that the sentences for Barnes and Brown were too low for the otherwise prototypical nature of their offenses. But there is no "mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall*, 552 U.S. at 47. "Our

-18-

sentencing scheme 'seeks to eliminate not all sentencing disparities, but only unwarranted disparities.'" *Lente*, 759 F.3d at 1169 (quoting *United States v. Contreras*, 180 F.3d 1204, 1210 (10th Cir. 1999)). We are confident that district courts can responsibly examine general sentencing trends for a particular crime without losing sight of the individual characteristics of the defendants before it.

And in any event, the court here "reviewed its sentences in prior deprivation of rights cases" and was "satisfied that the sentence" would "be consistent and avoid unwarranted disparities." App. 735. Even if the disparities factor weighs in favor of a higher sentence, the district court considered it alongside other factors and the facts of this case and did not abuse its discretion in imposing the sentences it did.

## III. Conclusion

Sentencing is both art and science, and it may be the hardest job our district judges undertake. While we are confident we would have imposed higher sentences based on the record in this case, we cannot say the district judge exceeded the bounds of permissible choice. We rely on the discretionary authority of our district courts as a powerful tool to ensure individualized consideration of each defendant's particular circumstances and characteristics.

After careful examination, we conclude that authority was not exceeded here. The dissent thoughtfully considers the district court's analysis of each of the individual § 3553(a) factors and ultimately concludes that the sentences are

too lenient.  We have no substantial quarrel with any particular point in its analysis, but our application of the standard of review leads us to uphold the sentences on remand.  We therefore **AFFIRM**.

*United States v. Barnes*, No. 17-7016, and
*United States v. Brown*, No. 17-7017
**BACHARACH**, J., dissenting.

This appeal stems from crimes committed by Mr. Raymond Barnes and Mr. Christopher Brown. Mr. Barnes was the Jail Superintendent for the Muskogee County Jail; Mr. Brown was the Assistant Jail Superintendent. Together, they abused prisoners and were convicted under 18 U.S.C. §§ 241 and 242, which cover conspiracy to violate constitutional rights and willful imposition of cruel and unusual punishment. In addition, Mr. Brown was convicted of making a false statement to a federal agent. *See* 18 U.S.C. § 1001. The district court imposed prison sentences of 24 months for Mr. Barnes and 12 months for Mr. Brown.

The government appeals, arguing that the sentences were substantively unreasonable because they were too light. The majority rejects this argument on the ground that the district court adequately explained its downward variances from the guideline range. I respectfully dissent.

## I.    The Abuses

The government's evidence of abuse included so-called "Meet and Greets," other forms of excessive force, and intimidation against subordinates to conceal what was taking place.

### A.    Meet and Greets

The abuses often began when prisoners arrived at the jail. For new arrivals expected to be difficult, Mr. Barnes and Mr. Brown arranged "meet and greets." The "greetings" would include slamming shackled prisoners to the ground after they exited the prison transport van.

Mr. Jace Rice was an inmate who received this "greeting." Before he arrived, Mr. Barnes had told two jailers that "[w]hen [Mr. Rice] comes out of the van . . . the first thing that touched the ground should be his head." Appellants' App'x at 302. With this instruction, a jailer pulled Mr. Rice out of the van and threw him onto his head. Officers piled on top of Mr. Rice to put on new restraints. He was then carried by his feet into the jail with his head on the ground. Mr. Barnes warned Mr. Rice that if he misbehaved, he could expect the same treatment again.

Another new inmate, Mr. Gary Torix, came to the Muskogee County Jail with staples in his head from an earlier injury. In the presence of Mr. Barnes, jailers took Mr. Torix from the van, slammed him to the ground, and carried him face-down into a cell as he bled from his forehead. The bleeding continued for over an hour.

Meet and greets were also conducted for Mr. Herbert Potts and Mr. Riley Starr. Mr. Potts's "greeter" was Mr. Brown. When Mr. Potts arrived, he was pulled to the ground. Mr. Starr received a similar "greeting," with jailers carrying him inside and hitting his head against the jail door.

## B.     Other Instances of Abuse

The abuse was not confined to the meet and greets. On one occasion, Mr. Barnes was called to assist with an incident. When he arrived, he approached an inmate (Mr. Jeremy Armstead) who had done nothing wrong. Without asking any questions, Mr. Barnes attacked Mr. Armstead. Mr. Armstead was restrained and forced to sit in a cell wearing a helmet for almost two hours. The ordeal resulted in a shoulder injury.

Another inmate, Mr. Alton Murphy, was also abused. When he got "mouthy," Mr. Barnes snuck up from behind and put his arms through Mr. Murphy's arms and around Mr. Murphy's head, applying a "full nelson." *Id.* at 309. Mr. Barnes and Mr. Murphy fell to the ground, and Mr. Brown piled on top. Another guard pepper sprayed everyone in the pile.

## C.     The Cover-Up

Mr. Barnes and Mr. Brown not only orchestrated the abuses but also engaged in a cover-up. The cover-up was exposed when former jailers testified that they had feared retaliation for reporting inmate abuse. These fears led some jailers to change incident reports, removing descriptions of mistreatment. One jailer testified that her shift had been changed twice after reporting abuses.

The cover-up continued when an FBI agent asked Mr. Brown about the meet and greets. Mr. Brown responded that new inmates had been "asked to . . . step out of the vehicle first" and then "asked to get on the

3

ground." *Id.* at 455. Mr. Brown added that if an inmate did not voluntarily comply, the jailers "would gently place the inmate onto the ground." *Id.*

## II. Procedural History

This is the second appeal in this case. After the trial, Mr. Barnes and Mr. Brown appealed their convictions and the government cross-appealed, challenging Mr. Barnes's twelve-month prison sentence and Mr. Brown's six-month prison sentence as procedurally and substantively unreasonable. We affirmed the convictions and vacated the sentences as procedurally unreasonable. *United States v. Brown*, 654 F. App'x 896, 900 (10th Cir. 2016) (unpublished). But we declined to reach the government's argument that the sentences were substantively unreasonable.

On remand, the district court resentenced Mr. Barnes and Mr. Brown, doubling their sentences and correcting procedural errors committed at the first sentencing. On appeal, the government again argues that the sentences are substantively unreasonable.

## III. Standard of Review

We review a district court's sentencing determination for substantive reasonableness. *United States v. Caiba-Antele*, 705 F.3d 1162, 1165 (10th Cir. 2012). For this review, we consider whether the district court abused its discretion by imposing a sentence that is unreasonably short. *United States v. Walker*, 844 F.3d 1253, 1255 (10th Cir. 2017). We may reverse only if the sentence "'exceeded the bounds of permissible choice.'" *United*

4

*States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)).

## IV. Substantive Reasonableness of the Sentences

In addressing whether the sentences were substantially reasonable, the parties discuss four of the statutory factors[1]:

1. the need to avoid unwarranted sentence disparities;

2. the nature and circumstances of the offense and the history and characteristics of the defendant;

3. the need for the sentences to reflect the seriousness of the crimes, deter future criminal conduct, prevent the defendants from committing more crimes, and provide rehabilitation; and

4. the sentencing guidelines.

18 U.S.C. § 3553(a)(1)–(2), (4), (6).

---

[1] Three other statutory factors exist:

1. the sentences that are legally available,

2. the Sentencing Commission's policy statements, and

3. the need for restitution.

18 U.S.C. § 3553(a)(3), (5), (7). But these factors were not discussed by the parties, the district court, or the majority.

5

## A. Difference Between Substantive and Procedural Reasonableness

A party can challenge a sentence as procedurally or substantively unreasonable. When addressing appellate arguments involving procedural reasonableness, we consider whether the district court

- improperly calculated the guideline range,

- treated the guidelines as mandatory,

- failed to consider the statutory factors,

- based the sentence on erroneous facts, or

- failed to adequately explain the chosen sentence.

*Gall v. United States*, 552 U.S. 38, 51 (2007). In contrast, when addressing substantive reasonableness, we consider whether the district court abused its discretion in determining that the length of the sentence was reasonable based on the statutory factors. *See United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009) (stating that substantive reasonableness "involves 'whether the length of the sentence is reasonable given all the circumstances of the case in light of the [statutory] factors'" (quoting *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007))).

The government's challenge to the sentences involves substantive reasonableness, not procedural reasonableness. In light of the nature of this challenge, we must do more than determine whether the district court considered the appropriate factors. Consideration of the appropriate factors

6

would render the sentences *procedurally* reasonable, not *substantively* reasonable. Because the government argues that the sentences are substantively unreasonable, we must determine whether the district court abused its discretion in concluding that the statutory factors had merited the given sentences. *See Kimbrough v. United States*, 552 U.S. 85, 110–11 (2007); *see also United States v. Sanchez-Leon*, 764 F.3d 1248, 1268 n.15 (10th Cir. 2014) (stating that for substantive reasonableness, we consider whether the district court imposed a sentence that fairly reflects the statutory factors).

The majority affirms, reasoning that the district court's "explanation of the sentences [was] based on defendant-specific facts and circumstances." Majority Op. at 4. This reasoning conflates procedural and substantive reasonableness. *Compare* Majority Op. at 8 (concluding that Mr. Barnes's sentence was substantively reasonable because the court had "thoroughly supported its variance with an analysis of the [statutory] factors"), *with* Majority Op. at 3 (stating that an earlier panel regarded the initial sentences as procedurally unreasonable because the district court had not "adequately explained the basis for the sentences imposed"). In gauging whether the new sentences are substantively reasonable, we are not considering the adequacy of the district court's *explanation*. Instead, we are considering the adequacy of the sentences themselves. *See* pp. 6–7, above.

7

The majority blurs this distinction, identifying the analytical "keystone" of substantive reasonableness as "the adequacy of the court's consideration and explanation of the [statutory] factors." Majority Op. at 8. In taking this approach, the majority relies on *United States v. DeRusse*, 859 F.3d 1232 (10th Cir. 2017). But in *DeRusse*, we did more than consider whether the district court adequately explained the sentencing variance; we also examined the reasonableness of the district court's conclusion based on its consideration of the statutory factors. 859 F.3d at 1237. Here the majority omits that step, reviewing the sentences for *substantive* reasonableness based on a rationale that instead fits the inquiry for *procedural* reasonableness.

The majority points out that there is some unavoidable overlap between procedural and substantive reasonableness. Majority Op. at 11. According to the majority, this overlap calls for review of the district court's explanation when addressing both substantive and procedural reasonableness. But the function of the district court's explanation differs when we consider substantive and procedural reasonableness. For procedural reasonableness, we consider whether the district court adequately explained its sentence using the statutory factors. *See* p. 6, above. We go a step further for substantive reasonableness, considering the reasonableness of the result. *See* pp. 6–7, above.

8

**B.    Extent of the Variance**

In determining whether the sentences were substantively reasonable, we must consider the district court's explanation for the extent of the variances. *Gall v. United States*, 552 U.S. 38, 51 (2007). Here the guideline ranges were 70–87 months, and the district court varied downward by roughly 66% (46 months) for Mr. Barnes and by roughly 83% (58 months) for Mr. Brown.

In considering the justifications for these downward variances, I recognize the institutional advantages of the district court, which had an opportunity to observe the defendants. *United States v. Walker*, 844 F.3d 1253, 1255 (10th Cir. 2017). Nonetheless, we bear an obligation to assess whether the sentences fell within the district court's discretion. *Id.*

**C.    Minimizing Disparities Among Sentences Nationwide for Violations of 18 U.S.C. §§ 241 and 242**

Federal law calls for avoidance of unwarranted sentence disparities, and "[t]he need to avoid [such] disparities is a critical sentencing factor." *United States v. Lente*, 647 F.3d 1021, 1039 (10th Cir. 2011); *see* 18 U.S.C. § 3553(a)(6). To apply this factor, we must consider sentences imposed across the country for violations of §§ 241 and 242. These crimes have generally been seen as severe crimes, meriting severe sentences. *See United States v. McQueen (Alexander)*, 727 F.3d 1144, 1160 (11th Cir. 2013) ("As best as we can tell, the federal courts have treated violations of

9

§ 241 by police or corrections officers as serious crimes meriting far higher sentences than the sentences [of twelve months and one month].").

The general practice is reflected in this diagram, which shows the sentences for 20 other convictions for excessive force under 18 U.S.C. §§ 241 and 242:



In each case, a correctional officer was convicted for using or failing to stop excessive force against an inmate. None resulted in the inmate's death. Nineteen of the twenty other sentences were more severe than either Mr. Barnes's or Mr. Brown's sentence.

In only one case—*United States v. McQueen (Alexander)*—was the sentence as low as the one meted out to Mr. Barnes or Mr. Brown. Mr.

---

[2]  Sources for these sentences appear in the appendix. Sentences marked with an asterisk include sentences for crimes other than a violation of 18 U.S.C. § 241 or § 242. These crimes include Mr. Brown's other crime (making a false statement to a federal officer). 18 U.S.C. § 1001. The other crimes included in the 20 other cases involved filing a false report, perjury, falsification of records, witness tampering, and obstruction of justice. 18 U.S.C. §§ 371, 1512, 1519, 1623.

McQueen faced a guideline range of 151–188 months' imprisonment. *McQueen*, 727 F.3d at 1150. A co-defendant's trial had resulted in a mistrial, and the co-defendant then pleaded guilty to a misdemeanor. *Id.* at 1149. The district court expressed concern for the disparity between Mr. McQueen's sentence and his co-defendant's maximum sentence of 12 months, leading the court to sentence Mr. McQueen to 12 months' imprisonment. *Id.* at 1150.

The government appealed, and the Eleventh Circuit held that Mr. McQueen's sentence was substantively unreasonable, calling it "wholly insufficient to achieve the purposes of sentencing." *Id.* at 1157. On remand, the district court continued to express deep concern about the disparity between Mr. McQueen's guideline range and the co-defendant's mandatory maximum sentence of 12 months. *See* Resentencing Hearing Tr. at 30, *United States v. McQueen (Alexander)*, No. 11-cr-20393-CMA (S.D. Fla. Oct. 30, 2013) (Doc. No. 318) (describing the disparity between the co-defendant's short sentence and Mr. McQueen's guideline range as "hard to accept"). The district court resentenced Mr. McQueen to time served, and the government did not appeal again. In light of the unique situation there, *McQueen* does not support the substantial downward variance for Mr. Barnes or Mr. Brown.

According to Mr. Barnes, the government failed to notify the district court of a sufficient number of other sentences to show a disparity. But in

11

district court, the government identified twelve other harsher sentences for law-enforcement officers who had violated § 241 or § 242. The references to twelve other sentences were enough to alert the district court to the danger of unwarranted sentence disparities.[3]

Mr. Barnes also contends that the government failed to identify the details of the other cases. But delving into the details does not help Mr. Barnes or Mr. Brown. Their convictions involved a pattern of assaults on multiple inmates. Of all the cases identified in the diagram, the shortest sentence for a conviction involving multiple assaults was *United States v. Tines*, No. CR 93-20117-MI (W.D. Tenn. June 30, 1994) (Doc. No. 4). Mr. Tines was sentenced to 63 months' imprisonment—more than double Mr. Barnes's sentence and more than five times Mr. Brown's sentence. *Id*.

The majority implies that our comparison to similarly situated defendants is unnecessary, stating that the district court considered the disparities. But if the district court had considered nationwide sentencing disparities, this consideration would have related to *procedural* reasonableness, not *substantive* reasonableness. *See Gall v. United States*,

---

[3] Mr. Barnes contends that we should decline to consider any case examples newly presented on appeal. I disagree. The government presented the issue to the district court, citing twelve case examples. The government did not forfeit the issue by omitting additional case examples newly presented on appeal.

552 U.S. 38, 53–56 (2007) (stating that whether a district court considered unwarranted disparities is an issue of procedural reasonableness).

And in fact, the district court *didn't* consider the far heavier sentences imposed in other similar cases. The court instead explained that it had "reviewed *its* prior sentences in deprivation of rights cases." Appellants' App'x at 735 (Brown), 739 (Barnes) (emphasis added). In light of this explanation, we have no reason to assume that the district court considered the evidence that a one-year or two-year sentence would create unwarranted sentence disparities. *See United States v. Lente*, 647 F.3d 1021, 1035 (10th Cir. 2011) (holding that even when the district court stated that it had considered all of the statutory factors, we cannot presume consideration of a party's sentencing-disparity argument under 18 U.S.C. § 3553(a)(6)).

The district court's focus on *its own* prior sentences led the court astray, and no one has cited a single sentence under 18 U.S.C. § 241 or § 242 that was as short as 24 months' imprisonment. I have found only one excessive-force case in which a sentence under § 241 or § 242 was as short as the sentences given to Mr. Barnes or Mr. Brown. And in that case, the circuit court of appeals had deemed the sentence substantively unreasonable. *United States v. McQueen (Alexander)*, 727 F.3d 1144, 1157 (11th Cir. 2013); *see* p. 11, above. Against the backdrop of this empirical evidence, the district court's consideration of its own prior sentences does

13

not reasonably support the uniquely light sentences given to Mr. Barnes and Mr. Brown.

* * *

The substantial downward variances for Mr. Barnes and Mr. Brown created unwarranted disparities with the sentences for other offenders convicted of similar crimes.

### D. The Nature and Circumstances of the Offenses

When determining the sentences, the district court pointed to the "nature and circumstances" of the crimes, which is a pertinent factor. *See* 18 U.S.C. § 3553(a)(1). This factor could not reasonably support a sentence as low as two years for Mr. Barnes or one year for Mr. Brown.

For this factor, the district court observed that there was no justification for what Mr. Barnes and Mr. Brown had done. But the court downplayed the severity of the offenses on the ground that "a show of strength and control may have served a purpose in the control of disorderly inmates and the overall safety of the jail staff." Appellants' App'x at 609. In downplaying the severity of the offenses, the court described the jail as a place "where tensions were noted to run high and the need for control was paramount." *Id*. at 651. This description suggests that the district court may have viewed the jail environment as a mitigating factor, but the opposite is true because Mr. Barnes and Mr. Brown had abused their powers in supervising the jail. *See United States v. Wittig*, 528 F.3d 1280,

14

1289 (10th Cir. 2008) (Hartz, J., joined by entire panel) (stating that "a sentence is substantively unreasonable if the only reason that the length is outside the range of what judges ordinarily impose" for defendants with similar records convicted of similar conduct "is that the sentencing judge has an idiosyncratic view of the seriousness of the offense").

### 1. Seriousness of the Crimes

The sentence should ordinarily reflect the seriousness of the crime. The legislative history of 18 U.S.C. § 3553 explains: "This purpose—essentially the 'just deserts' concept—should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct." S. Rep. No. 98-225, at 75 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3258.

The crimes committed by Mr. Barnes and Mr. Brown were "particularly serious." *United States v. McQueen (Alexander)*, 727 F.3d 1144, 1157 (11th Cir. 2013); *see also Koon v. United States*, 518 U.S. 81, 110 (1996) ("Public officials convicted of violating [18 U.S.C.] § 242 have done more than engage in serious criminal conduct; they have done so under color of the law they have sworn to uphold."). Thus, the "nature and circumstances" of the crimes did not support a downward variance.

Indeed, the guideline ranges were stiffened because the offenses had involved abuses committed under color of law against physically restrained prisoners. For example, the sentencing guidelines contemplate a 6-level

15

increase to the base-offense level for any offense committed under color of law. *See* U.S. Sentencing Guidelines Manual § 2H1.1(b)(1)(B). Thus, commission of "a crime while acting under color of law will result in a higher sentence . . . rather than a lower sentence." *United States v. LaVallee*, 439 F.3d 670, 708 (10th Cir. 2006). And there is a 2-level upward adjustment for a crime against a physically restrained victim. U.S. Sentencing Guidelines Manual § 3A1.3.

Mr. Barnes downplays the seriousness of unprovoked assaults on helpless, handcuffed prisoners, insisting that they had been troublesome before their transfer to the Muskogee County Jail. We rejected this view in the prior appeal: "The only proffered justification for the force used against these inmates was to discourage *future* repetition of their alleged *past* bad behavior. Such punitive treatment does not serve a legitimate penological purpose." *United States v. Brown*, 654 F. App'x 896, 911 (10th Cir.) (2016) (unpublished) (emphasis in original), *cert. denied*, 137 S. Ct. 237 (2016). Thus, we can infer "malicious, sadistic intent." *Id.* (internal quotations marks omitted).

The district court recognized that the sentences needed to reflect the seriousness of the offenses. *See* 18 U.S.C. § 3553(a)(2)(A). But the district court reasoned that the sentences were sufficient in part because neither Mr. Barnes nor Mr. Brown could ever work again in law enforcement. This

16

reasoning failed to differentiate the circumstances between the two defendants and others.

The Supreme Court considered a similar issue in *Koon v. United States*, 518 U.S. 81 (1996). There the Supreme Court held that a district court had abused its discretion when considering the inability to work in law enforcement because of a conviction under 18 U.S.C. § 242. *Koon*, 518 U.S. at 110. The Court reasoned not only that public employees are regularly fired for committing crimes but also that violators of § 242 have committed a crime "under color of the law they have sworn to uphold. It is to be expected that a government official would be subject to . . . career-related consequences . . . after violating § 242 . . . ." *Id*. at 110–11. Because the Sentencing Commission considered career loss when adopting the guideline range for violations of § 242, the Supreme Court held that the district court had erred in considering the loss of a law-enforcement career. *Id*. at 111.

The majority suggests that *Koon* does not apply to variances following *United States v. Booker*, 543 U.S. 220 (2005), which rendered the guidelines advisory rather than mandatory. But even after *Booker*, we have faulted district courts for "improperly relying on the collateral consequences flowing from the prosecution and conviction." *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) (unpublished); *see also United States v. Musgrave*, 761 F.3d 602, 608–09 (6th Cir. 2014) ("[W]hen

17

a district court varies downward on the basis of the collateral consequences of the defendant's prosecution and conviction, the defendant's sentence will not reflect the seriousness of the offense."). Career loss is a collateral consequence that does not differentiate Mr. Barnes or Mr. Brown from any other offender convicted under § 241 or § 242.

The defendants' inability to return to law enforcement was vastly outweighed by the seriousness of the crimes. The seriousness of the crimes is reflected in the assaults themselves. But the crimes consist of more than the sum of the assaults. The defendants cloaked these assaults in the power of the state, abusing the rule of law that "they ha[d] sworn to uphold." *Koon v. United States*, 518 U.S. 81, 110 (1996).

In this respect, the case resembles *United States v. Morgan*, where we held that a probationary sentence for corruption was substantively unreasonable. 635 F. App'x 423, 451–52 (10th Cir. 2015) (unpublished). Here too we have a crime against the "public trust in the fairness and integrity of government." *Id.* at 447. Though Mr. Barnes and Mr. Brown were not elected officials and did not engage in misconduct for personal financial gain, their constitutional violations harmed the "reputation of honest and stalwart public servants." *Id.*

Sentences for criminal violations of inmates' civil rights must be sufficiently serious to reflect the constitutional opprobrium cast on those who sadistically inflict cruel, unprovoked assaults against inmates. The

18

sentences of 24 and 12 months' imprisonment do not reflect the seriousness of the crimes. *Id.* at 448 (characterizing a sentence as substantively unreasonable when the district court had "paid only lip service to the seriousness of the offense and . . . harm to the reputation of honest public servants").

## 2. Doubts About the Verdict Against Mr. Brown

Mr. Brown defends his twelve-month sentence in part based on his lack of culpability. The district court reasoned that most witnesses had not seen Mr. Brown participate in assaults or heard him direct other staff members to assault prisoners. But the district court cannot base leniency on skepticism about the verdict.

Though some witnesses didn't see Mr. Brown participate in an assault, other witnesses did. For example, a jailer (Ms. Ashley Mullen) testified that Mr. Brown had pulled a handcuffed inmate (Mr. Herbert Potts) onto the concrete "pretty much face first." *United States v. Brown*, 654 F. App'x 896, 901 (10th Cir. 2016) (unpublished), *cert. denied*, 137 S. Ct. 237 (2016).[4] And others testified that they had seen Mr. Brown assault Mr. Alton Murphy. *Id.* at 909. In the face of these accounts, the district court could not reasonably lighten Mr. Brown's sentence based on

---

[4] The district court instructed the jury to disregard the jailer's testimony about a separate incident, but not this one.

disagreement with the verdict. *See United States v. Slaton*, 801 F.3d 1308, 1320 (11th Cir. 2015) (holding that the district court erred in basing the sentence on a finding that conflicted with the verdict); *United States v. Bertling*, 611 F.3d 477, 480–82 (8th Cir. 2010) (stating that district courts should not "'rely on a defendant's innocence when the defendant has already been found guilty beyond a reasonable doubt'" (quoting *United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008))); *United States v. Curry*, 461 F.3d 452, 461 (4th Cir. 2006) (holding that the district court erred in basing the sentence on a conclusion that conflicted with the verdict).[5]

Though the district court seemed to question whether Mr. Brown had actually assaulted prisoners, the court acknowledged Mr. Brown's role in orchestrating the abuses. Mr. Brown was the jail's second in command; thus, the court applied an enhancement for a supervisory role, adding that Mr. Brown had "helped organize the meet and greets." Appellants' App'x at 221–22. This supervisory role could support a conviction under either § 241 or § 242 even if Mr. Brown had not personally participated in the assaults. *See United States v. Brown*, 654 F. App'x 896, 908 (10th Cir. 2016) (unpublished) ("Physical assault is not a necessary element of either

---

[5] Mr. Brown previously appealed his conviction in part on the ground that "no credible witness [had] testified that he physically assaulted an inmate or instructed anyone else to do so." *United States v. Brown*, 654 F. App'x 896, 908 (10th Cir. 2016) (unpublished), *cert. denied*, 137 S. Ct. 237 (2016). We disagreed, noting that three witnesses had testified about assaults committed by Mr. Brown. *Id.* at 908–09.

20

[§ 241 or § 242].”), *cert. denied*, 137 S. Ct. 237 (2016). Consequently, the district court could not reasonably justify the downward variances for Mr. Brown based on skepticism about the verdict.

### 3.    Pepper-Spray Incident

The district court found that Mr. Brown's culpability was diminished by the fact that he had been pepper sprayed. The court did not explain its logic, and the defendants do not defend it. Mr. Barnes jumped a helpless prisoner and pummeled him. Mr. Brown approached, seeing his boss (Mr. Barnes) committing an assault. Rather than try to stop Mr. Barnes, Mr. Brown burst into the fray to help his boss beat up a defenseless prisoner. Another guard joined in and pepper sprayed all three men. I fail to see how Mr. Brown's exposure to pepper spray diminished the seriousness of his crimes.[6]

### E.    The Defendants' History and Characteristics

The district court credited both defendants with characteristics supporting leniency, such as the absence of a prior criminal record, the presence of significant family responsibilities, and the existence of significant medical problems for Mr. Barnes. These characteristics do not support the substantial downward variances.

---

[6]    The district court also commented on the fact that Mr. Barnes had been pepper sprayed. But the court did not explain the relevance of this fact during Mr. Barnes's sentencing.

### 1.     Absence of a Prior Criminal Record

The sentencing guidelines incorporate a defendant's criminal history in the assessment of an offense level. *See United States v. Rose*, 435 F.3d 735, 738 (7th Cir. 2006) (stating that the defendant's "lack of a prior criminal record was . . . accounted for in his Criminal History category"). Mr. Barnes and Mr. Brown had a criminal-history category of I based on their lack of prior criminal records. Though the criminal history is already taken into account, the court can consider the absence of a prior criminal record as a basis to vary downward. *United States v. Huckins*, 529 F.3d 1312, 1318 (10th Cir. 2008); *see* Majority Op. at 19. But here, the marginal relevance of the defendants' clean criminal records did not justify the substantial downward variances.

We addressed a similar issue in *United States v. Hildreth*, 485 F.3d 1120 (10th Cir. 2007). There the guideline range was 27–33 months' imprisonment, and the district court varied downward to 3 years' probation. *Hildreth*, 485 F.3d at 1123. The district court relied in part on the low risk of public danger, pointing to the absence of past conduct that might be considered aggressive, violent, or non-compliant. *Id*. at 1128. We rejected this approach and regarded the sentence as unreasonably low. *Id*. at 1129–30. We reasoned that the guidelines had already accounted for the absence of an aggressive or violent history. *Id*. at 1129.

22

Under *Hildreth*, the defendants' lack of a prior criminal record does not support the substantial downward variances.

## 2. Family Responsibilities

The district court relied heavily on the defendants' family responsibilities when deciding to vary downward. In pointing to these responsibilities, the district court noted how many children each defendant had. These family responsibilities might support some downward variance, but not one as sizable as the variance given to Mr. Barnes or Mr. Brown.

In calling for the creation of sentencing guidelines, Congress observed that it is generally inappropriate to consider the defendant's family responsibilities. 28 U.S.C. § 994(e). Based on this observation, "[t]he Sentencing Guidelines state that a defendant's '[f]amily ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.'" *United States v. McClatchey*, 316 F.3d 1122, 1130 (10th Cir. 2003) (second alteration and omission in original) (quoting U.S. Sentencing Guidelines Manual § 5H1.6).

In some circumstances, a defendant's family responsibilities may bear on the sentencing decision. *See United States v. Jarvi*, 537 F.3d 1256, 1263 (10th Cir. 2008) (stating that district courts can consider individual characteristics even when disfavored under the guidelines). An example took place in *United States v. Muñoz-Nava*, 524 F.3d 1137 (10th Cir.

23

2008). *Muñoz-Nava* involved a downward variance from a 46–57-month guideline range to 12 months in prison and 12 months in home confinement. 524 F.3d at 1142. In varying downward, the district court relied in part on the defendant's role as the "primary caretaker and sole supporter of his eight-year-old son" and as the "sole supporter of . . . ailing and elderly parents." *Id*. at 1142–43. In addition, the district court ordered 12 months of home confinement to allow the defendant to care for his family during the course of his punishment. *Id*. Two facts distinguish this case from *Muñoz-Nava*.

First, the disparity between the sentences and the guideline ranges is greater here than it was in *Muñoz-Nava. Compare Muñoz-Nava*, 524 F.3d at 1142 (stating that the guideline range was 46–57 months' imprisonment and that the sentence was 12 months' imprisonment and 12 months' home confinement), *with* Appellants' App'x at 683, 717 (stating that the guideline range was 70–87 months for Mr. Barnes and Mr. Brown).

Second, the defendant in *Muñoz-Nava* was the primary caretaker for his child and the only person capable of supporting his son and elderly parents. In our case, however, the district court did not regard either Mr. Barnes or Mr. Brown as the only parent able to care for the children. Indeed, Mr. Barnes's wife provided most of the financial support for the family even though she suffered from fibromyalgia. Similarly, Mr. Brown's wife worked two jobs, providing financial support for the family.

24

*Muñoz-Nava* does not support the substantial downward variances granted to Mr. Barnes and Mr. Brown. Their incarcerations will undoubtedly burden their respective families, but these burdens are "'to be expected when a family member engages in criminal activity that results in a period of incarceration.'" *United States v. Rodriguez-Velarde*, 127 F.3d 966, 968 (10th Cir. 1997) (quoting *United States v. Canoy*, 38 F.3d 893, 907 (7th Cir. 1994)). In my view, the defendants' family circumstances are not so extraordinary that they could reasonably justify a 12-month or 24-month sentence in light of the seriousness of the crimes and the need to avoid unwarranted sentencing disparities. *See United States v. Dautovic*, 763 F.3d 927, 935 (8th Cir. 2014) (holding that a 20-month sentence under § 242 was unreasonably light though the defendant "was a first time offender who had done good things for his community and family").

### 3.    Mr. Barnes's Health

The district court also acknowledged Mr. Barnes's health problems. But these problems do not reasonably support the substantial downward variance for Mr. Barnes.

A defendant's physical condition can be considered at sentencing. *United States v. White*, 506 F.3d 635, 644 (8th Cir. 2007). But consideration of a defendant's physical condition is discouraged unless it is extraordinary. *United States v. Lewis*, 594 F.3d 1270, 1277 (10th Cir. 2010). "Discouraged factors . . . are those 'not ordinarily relevant to the

25

determination of whether a sentence should be outside the applicable guideline range.'" *Koon v. United States*, 518 U.S. 81, 95 (1996) (quoting U.S. Sentencing Guidelines Manual § 5H intro. cmt.).

The district court mentioned Mr. Barnes's physical condition: "He suffers from significant health problems and receives ongoing treatment for several different ailments, including most recently tongue cancer and he takes up to 14 medications daily." Appellants' App'x at 610–11. But the court did not characterize Mr. Barnes's medical problems as extraordinary or suggest that they would justify the substantial downward variance.

These medical problems, coupled with Mr. Barnes's family responsibilities and lack of criminal history, do not justify the downward variance from 70 to 24 months. *See United States v. Borho*, 485 F.3d 904, 907, 913 (6th Cir. 2007) (holding that a downward variance from 210 months to 72 months was substantively unreasonable notwithstanding the defendant's back injury and diabetes).

### 4.    Conduct While on Release

The district court commented that Mr. Barnes and Mr. Brown had conducted themselves in a "positive" way while on release. Appellants' App'x at 611, 652. Notwithstanding these comments, the court did not appear to rely on the defendants' positive conduct while on release.

Ordinarily, a defendant's lawful conduct while on release can bear on the appropriate sentence. *See Pepper v. United States*, 562 U.S. 476, 490–

93 (2011) (holding that evidence of rehabilitation may be considered after the initial sentence has been set aside on appeal). But here the defendants' conduct while on release proved little. Their crimes took place only in their capacities as superintendents for a county jail, and the two men had lost their jobs before the charges were brought. As a result, the defendants' laudable conduct on release sheds little light on the appropriate sentences. *See United States v. Smith*, 860 F.3d 508, 519 (7th Cir. 2017) (noting that progress while on release after conviction under § 242 was laudable, but "[t]his relatively minor evidence of rehabilitation must be assessed in light of . . . [an] appalling history" of beatings and "other abuses of power over inmates"); *see also United States v. Walker*, 844 F.3d 1253, 1256–57 (10th Cir. 2017) (concluding that a sentence was unreasonably short notwithstanding the defendant's positive conduct while on release prior to the sentencing).

### F.    The Risk of Recidivism and Need for Deterrence

In deciding on the sentence, the district court must consider the risk of recidivism and the need to deter the defendants and others. *See United States v. Steele*, 603 F.3d 803, 809 n.5 (10th Cir. 2010) (recidivism); *United States v. Walker*, 844 F.3d 1253, 1257 (10th Cir. 2017) (deterrence). The district court reasonably concluded that lengthy sentences were unnecessary to deter Mr. Barnes and Mr. Brown and that

they were unlikely to recidivate. But the court failed to adequately consider the need to deter others.[7]

The need to deter crimes by other individuals, known as general deterrence, "'is one of the key purposes of sentencing.'" *Walker*, 844 F.3d at 1257 (quoting *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006)). General deterrence is a particularly important factor when assessing sentences varying below the guideline ranges. *See id*. at 1258.

General deterrence is also particularly important when we consider crimes committed by prison officials under color of law. "Prison inmates serve their sentences under the pervasive control of the corrections staff" and, as a result, are "'uniquely vulnerable'" to assaults from corrections officers. *United States v. McQueen (Alexander)*, 727 F.3d 1144, 1158 (11th Cir. 2013) (quoting *Maryland v. Shatzer*, 559 U.S. 98, 127 (2010) (Stevens, J., concurring)). These assaults often "go undetected and unpunished." *Id*. The difficulty of detection undermines general deterrence, which "comes from a probability of conviction and significant consequences." *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) (unpublished). Thus, the district court's softening of the "consequences" for Mr. Barnes

---

[7] The sentence should also reflect other sentencing objectives, such as rehabilitation and incapacitation. *United States v. Walker*, 844 F.3d 1253, 1256 (10th Cir. 2017). But the district court did not suggest that the downward variances would promote rehabilitation or incapacitation. Nor do the parties discuss these objectives.

28

and Mr. Brown served to further diminish the deterrent value of the sentences. *See United States v. Jordan*, 678 F. App'x 759, 771 (10th Cir. 2017) (unpublished).

The sentences here minimized the significant consequences contemplated by the guidelines for serious crimes. And these crimes carry a relatively low probability of detection and conviction, crystallizing the importance of significant consequences to deter violations of § 241 or § 242. Against this backdrop, the light sentences for Mr. Barnes and Mr. Brown did little to promote general deterrence.[8]

## V.    Totality of the Sentencing Factors

Based on the totality of sentencing factors, I conclude that Mr. Barnes's 24-month sentence and Mr. Brown's 12-month sentence were unreasonably short. A jury found that both men had (1) conspired to physically abuse inmates and (2) committed some of the abuses themselves. Mr. Barnes and Mr. Brown concealed the abuses and coerced

---

[8]    The district court noted that the prison terms would be followed by supervised release for three years. Mr. Barnes argues that the supervised-release conditions would promote general deterrence for would-be offenders valuing their privacy. In my view, the deterrent value of the supervised-release terms would be marginal. "While it is true that someone on supervised release is not entirely free, it is equally true that he is not confined in a prison either." *United States v. Irey*, 612 F.3d 1160, 1210 (11th Cir. 2010); *see also United States v. Bistline*, 665 F.3d 758, 766 (6th Cir. 2012) ("[A] term of supervised release is simply not enough to reflect the seriousness of the offense here.").

29

subordinates to fabricate reports. The district court's downward variances of roughly 66% and 83% were unwarranted.

The majority reasons that the district court adequately analyzed the statutory factors. But this analysis would not render the sentences *substantively* reasonable. Indeed, the district court's explanation does little to justify the substantial variances. For example, the sentences were not justified by the fact that the crimes had been committed against inmates. Nor were the sentences justified by the defendants' lack of a prior criminal record, their lawful conduct while on release, their low risk of recidivism, their family circumstances, or Mr. Barnes's medical problems. Many of these factors are discouraged as grounds for variances, and none of these factors distinguish Mr. Barnes or Mr. Brown from other offenders convicted under § 241 or § 242.

Nonetheless, the district court imposed sentences far below other similarly situated offenders, creating unwarranted sentencing disparities, doing little to deter future violations of inmates' civil rights, and failing to reflect the seriousness of the crimes. Thus, I regard the sentences as substantively unreasonable and respectfully dissent.

1.  *United States v. Wilson*, No. 10CR390-AGF (E.D. Mo. Oct. 7, 2011) (Doc. No. 120), *aff'd*, 686 F.3d 868 (8th Cir. 2012). The defendant was a law-enforcement official with supervisory authority at a jail. Sent. Tr. at 14, *id*. (Doc. No. 109). The conviction arose out of the defendant's role in assaulting four inmates. *Id*. at 19–20. The guideline range was 97–121 months. *Id*. at 35.

2.  *United States v. McCoy*, No. 08-CR-135-KKC-2 (E.D. Ky. Sept. 1, 2010) (Doc. No. 173), *aff'd*, 480 F. App'x 366 (6th Cir. 2012). The defendant was a correctional officer who assaulted five inmates and falsified reports to conceal the assaults. *McCoy*, 480 F. App'x at 367–68. The guidelines called for a prison sentence of 120 months, the statutory maximum. Sent. Tr. at 29, *United States v. McCoy*, No. 08-CR-135-KKC-2 (E.D. Ky. Sept. 1, 2010) (Doc. No. 190).

3.  *United States v. McQueen (John)*, No. 08-CR-135-KKC-1 (E.D. Ky. Sept. 1, 2010) (Doc. No. 172), *aff'd sub nom. United States v. McCoy*, 480 F. App'x 366 (6th Cir. 2012). The defendant was a jail officer who assaulted four detainees and falsified reports to conceal the assaults. *McCoy*, 480 F. App'x at 367–68. The guidelines called for a prison term of 120 months, the statutory maximum. Sent. Tr. at 13, *United States v. McQueen (John)*, No. 08-CR-135-KKC-1 (E.D. Ky. Sept. 1, 2010) (Doc. No. 172), *aff'd sub nom. United States v. McCoy*, 480 F. App'x 366 (6th Cir. 2012).

4.  *United States v. McQueen (Alexander)*, No. 11-CR-20393-CMA (S.D. Fla. Nov. 22, 2013) (Doc. No. 322), *remanded from* 727 F.3d 1144 (11th Cir. 2013). The defendant was a correctional officer who sanctioned and participated in assaults on prisoners and filed a false report to conceal the assaults. *McQueen (Alexander)*, 727 F.3d at 1147–49. The guidelines called for a prison term of 151–188 months. *Id*. at 1150. The district court sentenced the defendant to 12 months, the circuit court of appeals vacated and remanded for resentencing, and the district court resentenced the defendant to time served. *United States v. McQueen (Alexander)*, No. 11-CR-20393-CMA (S.D. Fla. Nov. 22, 2013) (Doc. No. 322). The government did not appeal the sentence a second time.

5.  *United States v. Gould*, No. 03-CR-02274-JB (D.N.M. May 6, 2009) (Doc. No. 440), *aff'd*, 672 F.3d 930 (10th Cir. 2012). The defendant was a jail supervisor who assaulted two detainees and filed a false

incident report. Sent. Tr. at 12, 19, 93, *id.* (Doc. No. 463). The guideline range was 120 months, the statutory maximum. *Id.* at 93.

6. *United States v. Tines*, No. CR-93-20117-MI (W.D. Tenn. June 30, 1994) (Doc. No. 4), *aff'd*, 70 F.3d 891 (6th Cir. 1995). The conviction stemmed from a deputy sheriff's role in assaulting six juvenile detainees. *Tines*, 70 F.3d at 893–95. The existing public record does not reflect the applicable guideline range.

7. *United States v. Bunke*, No. 08CR65 (N.D. Ohio Mar. 11, 2009) (Doc. No. 148), *aff'd*, 412 F. App'x 760 (6th Cir. 2011). The conviction under § 242 was based on a prison guard's use of excessive force against a prisoner. Gov't's Sent. Br. at 1, 3–7, *id.* (Doc. No. 136). The district court noted that the defendant had not initiated the confrontation. Sent. Tr. at 48, *id.* (Doc. No. 154). The guideline range was 57–71 months. *Id.* at 32.

8. *United States v. Bailey*, No. 00-CR-10431 (D. Mass. Nov. 17, 2003) (Doc. No. 421), *aff'd* 405 F.3d 102 (1st Cir. 2005). The conviction stemmed from a prison guard's role in using excessive force against an inmate and submitting a false report afterward. *Bailey*, 405 F.3d at 106–07. The guideline range was 41–51 months. *Id.* at 112.

9. *United States v. Verbickas*, No. 00-CR-00481-WYD-5 (D. Colo. Nov. 21, 2003) (Doc. No. 1479), *aff'd sub nom. United States v. LaVallee*, 439 F.3d 670 (10th Cir. 2006). The defendant was a correctional officer who assaulted an inmate at the captain's direction and falsified information about the incident. *LaVallee*, 439 F.3d. at 678–79. The guideline range was 27–33 months. *Id.* at 702.

10. *United States v. LaVallee*, No. 00-CR-00481-WYD-1 (D. Colo. Nov. 21, 203) (Doc. No. 1479), *aff'd* 439 F.3d 670 (10th Cir. 2006). The defendant was a correctional officer who assaulted an inmate and fabricated a report about the incident. *LaVallee*, 439 F.3d at 679. The guideline range was 41–51 months. *Id.* at 703.

11. *United States v. Schultz*, No. 00-CR-00481-WYD-2 (D. Colo. Nov. 21, 2003) (Doc. No. 1479), *aff'd sub nom. United States v. LaVallee*, 439 F.3d 670 (10th Cir. 2006). The defendant was a correctional officer who assaulted an inmate and fabricated a report about the incident. *LaVallee*, 439 F.3d at 679. The guideline range was 41–51 months. *Id.* at 703.

12. *United States v. Gonzales*, No. 02-CR-00609-2 (S.D. Tex. Feb. 2, 2004) (Doc. No. 247), *aff'd*, 436 F.3d 560 (5th Cir. 2006). The defendant was a federal deportation officer who was convicted of (1) using unreasonable force against someone in his custody and (2) acting with deliberate indifference to the individual's medical needs. *Gonzales*, 436 F.3d at 566. The guideline range was 63–78 months. Br. of Appellant at 51, *Gonzales*, 436 F.3d 560 (No. 04-20131), 2004 WL 5489398.

13. *United States v. Gomez*, No. 02-CR-00609-3 (S.D. Tex. Feb. 2, 2004) (Doc. No. 248), *aff'd sub nom. United States v. Gonzales*, 436 F.3d 560 (5th Cir. 2006). The defendant was a federal deportation officer who was convicted of acting with deliberate indifference to a detainee's medical needs. *Gonzales*, 436 F.3d at 566. The existing public record does not reflect the applicable guideline range.

14. *United States v. Reyna*, No. 02-CR-00609-1 (S.D. Tex. Feb. 2, 2004) (Doc. No. 246), *aff'd sub nom. United States v. Gonzales*, 436 F.3d 560 (5th Cir. 2006). The defendant was a federal deportation officer who was convicted of acting with deliberate indifference to a detainee's medical needs. *Gonzales*, 436 F.3d at 566. The sentence was at the bottom of the guideline range, which is not specified in the public record. *Id.* at 583.

15. *United States v. Gilpatrick*, No. 05-CR-00009 (M.D. Tenn. May 22, 2007) (Doc No. 211), *aff'd*, 548 F.3d 479 (6th Cir. 2008). The defendant was a deputy sheriff who orchestrated the assault of a detainee. *Gilpatrick*, 548 F.3d at 480–81. In addition to the 84-month prison term, the sentence included 24 months in a "community corrections facility." *Id.* The guideline range was 108–135 months. *Id.* at 482.

16. *United States v. Miller*, No. 04-CR-183-JMM (E.D. Ark. Feb. 27, 2006) (Doc. No. 82), *aff'd*, 477 F.3d 644 (8th Cir. 2007). The defendant was a jail supervisor convicted under § 242 for assaulting two inmates. *Miller*, 477 F.3d at 646–47. The existing public record does not reflect the applicable guideline range.

17. *United States v. Lopresti*, No. 07-CR-00273-CBA (E.D.N.Y. June 26, 2008) (Doc. No. 427), *aff'd*, 340 F. App'x 30 (2d Cir. 2009). The conviction under § 241 stemmed from a prison guard's role in beating a prisoner and orchestrating a cover-up. *See Lopresti*, 340 F. App'x at 31–32. The guideline range was 51–63 months. Gov't's

Sent. Mem. at 10, No. 07-CR-00273-CBA (E.D.N.Y. June 26, 2008) (Doc. No. 427), *aff'd*, 340 F. App'x 30 (2d Cir. 2009).

18.  *United States v. Fuller*, No. 01-CR-00593-WJ-1 (D. N.M. Mar. 27, 2006) (Doc. No. 280), *remanded from sub nom. United States v. Serrata*, 425 F.3d 886 (10th Cir. 2005). The defendant was convicted of coordinating and participating in the assault of an inmate and subsequent efforts to cover up the assault. *Serrata*, 425 F.3d at 889–91. The guideline range was 78–97 months. *Id.* at 893.

19.  *United States v. Serrata*, No. 01-CR-00593-WJ-4 (D. N.M. Mar. 27, 2006) (Doc. No. 281), *remanded from* 425 F.3d 886 (10th Cir. 2005). The defendant was convicted of (1) failing to intervene to stop an assault on an inmate and (2) participating in a subsequent cover up. *Serrata*, 425 F.3d at 890–91. The guideline range was 51–63 months. *Id.* at 892.

20.  *United States v. Broussard*, No. CR-00036-1 (W.D. La. April 6, 2017) (Doc. No. 29), *aff'd*, 882 F.3d 104 (5th Cir. 2018). The conviction under § 242 was based on the lieutenant's failure to intervene when a prisoner was beaten by officers. *Broussard*, 882 F.3d at 107. The guideline range was 63–78 months. *Id*. at 108.

4